Charles L. BOGUSLAWSKI, Petitioner,

v.

**DEPARTMENT OF EDUCATION and Professional Standards and Practices Commission, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2003.

Decided Dec. 4, 2003.

William K. Eckel, Johnstown, for petitioner.

Ann G. St. Ledger, Harrisburg, for respondents.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Charles L. Boguslawski (Petitioner) petitions for review of a decision of the Pro-

fessional Standards and Practices Commission (Commission) which accepted the hearing examiner's decision to revoke the professional employee's teaching certificate under the Professional Educator Discipline Act (Act), Act of December 12, 1973, P.L. 397, *as amended,* 24 P.S. §§ 2070.1a–2070.18a. We affirm.

Petitioner was employed by the Armstrong School District as a fourth grade teacher at the West Hills Elementary School. During the 1998–1999 school year, two students in Petitioners homeroom alleged that Petitioner had improperly touched them.[1]

On March 30, 1999, Petitioner was interviewed by State Trooper, Jeffery Rood about the allegations. Petitioner was subsequently arrested and criminal charges filed against him. Petitioner was suspended with pay for the rest of the 1998–1999 school year. Petitioner was on medical sabbatical leave for the 1999–2000 school year and he returned from sabbatical and resumed his teaching duties for all of the 2000–2001 school year, the 2001–2002

school year, and for a portion of the 2002–2003 school year.

In June of 2000, the Armstrong County Common Pleas Court (trial court) held a criminal jury trial at which Petitioner was found not guilty of all charges. Petitioner has denied all charges consistently.

Petitioner has an excellent past and current record and as of the 2002–2003 school year, had been teaching for thirty-two years. Petitioner has no prior record of any discipline problems. Petitioner was undergoing cancer treatment at the time of the incident and thereafter.

On June 27, 2001, the Department of Education (Department) filed a notice of charges seeking disciplinary action against Petitioner on the grounds of immorality and intemperance. The Hearing Officer conducted the hearings on March 20 and 21, 2002 finding that Petitioner was guilty of the alleged conduct and revoked his teaching certificate. Petitioner filed exceptions with the Commission. The Commission dismissed Petitioners exceptions and accepted the proposed decision and order of the hearing officer. Petitioner petitioned our Court for review.[2]

1. Among the twenty to twenty-five students in Petitioners homeroom were two boys, Cody and Toby and a girl, Ashley. At the end of each day, students reported to their homerooms to wait for dismissal and the arrival of their buses. As buses were called, the number of students in the homeroom gradually decreased. Cody, Toby and Ashley were among the last few students to leave homeroom.

Cody alleged that early in 1999, during the dismissal period, Petitioner inappropriately touched him on three separate occasions. On each occasion, Petitioner placed one of his hands on top of the other and placed his lower hand upon Cody's penis. Petitioner then moved his hand on top of Cody's penis and continued to touch Cody until the arrival of Cody's bus was announced.

Toby alleged that in or around March, during the dismissal period, Petitioner on several occasions, called Toby to his desk and pulled

Toby by the hips onto his knee. Petitioner then placed his hands on top of one another and then laid them on top of Toby's penis. On one occasion, Petitioner grabbed Toby's hands and placed them on Petitioner's penis. Subsequently, Petitioner touched Toby's nipple under his shirt with his fingers. Ashley witnessed that particular incident and corroborated Toby's story.

Initially, neither boy told their parents about the touching. However, when Petitioner touched Toby's nipple, Toby decided to tell his mother since that incident involved touching beneath Toby's clothing. Cody's mother eventually received a call from Toby's mother, after which, Cody's mother spoke with her son who told her that Petitioner had also touched him.

2. Our review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were sup-

■ Petitioner contends that the Department of Education failed to meet its burden of proof; that findings of fact which were necessary for the decision to revoke the teaching certificate of Petitioner were not supported by substantial evidence; that the Commission committed an error of law in accepting the proposed decision and order of the hearing examiner; and that the Commission erred in failing to find that a not guilty verdict of all criminal charges by a criminal court jury with the trial court in June, 2000, served as res judicata and/or collateral estoppel, since the testimony from the two (2) students presented to the trial court was very similar to their testimony at the Commission's proceeding.

■ The Department is not estopped and res judicata does not apply in this case. The doctrine of res judicata requires Petitioner to meet all of the following four elements:

(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; (4) identity of the quality in the persons for or against whom the claim is made.

*City of Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 559 A.2d 896, 901 (1989). Petitioner does not meet any of the requirements for res judicata. First, in the criminal case the thing sued for was Petitioner's freedom. In the present matter the thing sued for is Petitioner's certification as an educator in the Commonwealth. Because he did not meet this initial requirement, we need not address the other three prongs.

■ The doctrine of collateral estoppel does not apply in this case. "[The] resolution of criminal charges in favor of a criminal defendant does not bar subsequent civil or administrative proceedings concerning the same underlying conduct." *Pennsylvania State Police v. Swaydis,* 504 Pa. 19, 470 A.2d 107, 108 (1983), appeal dismissed, 511 Pa. 367, 514 A.2d 1369 (1986).

Next, Petitioner contends that the Hearing Officer erred in ignoring the Petitioner's testimony as well as the testimony of Petitioner's witnesses and that the Department failed to meet its burden of proof, as the testimony of the boys is inconsistent and the allegations are incredible.[3]

■ The Department has the burden of establishing that grounds for discipline exist. Section 13 of the Act, 24 P.S. § 2070.13(c)(2). The boys testified that they were abused, how they were abused and the time of day that it occurred. The boys were only inconsistent in the number of times that it happened and the date the abuse started. Toby stated that the abuse occurred on 13 or 14 occasions, but not on a daily basis, in the month of March. The testimony of Petitioner and his witnesses, which were found not credible, relate that Petitioner was not in his homeroom for two weeks in March, March 8 through the 19, and was off the following Monday, March 22, leaving only ten days in which the alleged abuse could have occurred, March 1–5, 23–26, and 29.

Section 5(a)(11) of the Act, 24 P.S. § 2070.5(a)(11) states that the Commission "shall have the power and its duty shall be ... [t]o discipline any professional educator or charter school staff member found

ported by substantial evidence. *Startzel v. Commonwealth, Department of Education,* 128 Pa.Cmwlth. 110, 562 A.2d 1005 (1989), appeal denied, 524 Pa. 636, 574 A.2d 76 (1990).

**3.** Petitioner also contends that the Hearing Officer erred in finding that the burden was by a preponderance of the evidence. The Hearing Officer was correct. *See Landisberry v. PUC,* 134 Pa.Cmwlth. 218, 578 A.2d 600 (1990).

guilty upon hearings before the commission of immorality, incompetency, intemperance, cruelty or negligence...."

■ The Commission is the ultimate factfinder. Section 14 of the Act, 24 P.S. § 2070.14, provides in relevant part:

(b) The commission shall promptly consider exceptions to the hearing officer's decision. The commission by a majority vote of the full membership shall accept, modify or reject the hearing officer's decision, except that, in the case of discipline of an administrator, all exceptions shall be taken by a special panel of at least nine members of the commission selected by the chairperson, which will include no more than three teachers.

(c) Within 45 days after receiving the decision from the hearing officer and the exceptions thereto, the commission shall issue a written opinion and order affirming, reversing or modifying the hearing officer's decision and imposing discipline, if any.

24 P.S. § 2070.14(b) and (c).

In *Gow v. Department of Education, Professional Standards and Practices Commission*, 763 A.2d 528 (Pa.Cmwlth. 2000), we found that: "a review of the language reveals the legislature's intention to empower the Commission as the ultimate fact finder with the authority to affirm, reverse, or modify the hearing officer's decision as well as to impose discipline accordingly. Section 16 of the Act, 24 P.S. § 2070.16. Thus, as the final fact finder, the Commission must judge the weight and credibility of evidence and witnesses."

■ In the present controversy, the Commission did not take any additional testimony or evidence. However, the Commission is empowered to substitute its own independent judgment instead of deferring to the judgment of the hearing officer. The Commission did not err in its review of this matter. The Commission accepted the opinion of the Hearing Officer which found the boys' testimony credible and Petitioner and his witnesses not credible. There was substantial evidence to support the Hearing Officer's findings of immorality and intemperance.

Accordingly, we affirm.

### ORDER

AND NOW, this 4th day of December, 2003 the order of the Department of Education and Professional Standards and Practices Commission in the above-captioned matter is affirmed.