Travis RUANE, Petitioner,

v.

SHIPPENSBURG UNIVERSITY,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 15, 2004.

Decided Feb. 2, 2005.

Publication Ordered April 5, 2005.

Anthony T. Lucido, Carlisle, for petitioner.

Jeffrey B. Hawkins, Harrisburg, for respondent.

BEFORE: McGINLEY, J., and PELLEGRINI, J., and LEADBETTER, J.

OPINION BY Judge LEADBETTER.

Travis Ruane, a student, petitions for review of the decision of Shippensburg University[1] suspending him for two years based on the University Judicial Board's (Board) finding that he sexually assaulted a fellow student. Ruane asserts that the Board's hearing did not afford him due process and challenges the sufficiency of the evidence. Discerning no merit in these contentions, we affirm.

Based on an e-mail from Allison Morris to Dean Roger Serr, accusing Ruane of sexually assaulting her at a campus party,

---

1. The University is a part of the State System of Higher Education. *See* Section 2002A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, added by the Act of November 12, 1982, P.L. 660, *as amended,* 24 P.S. § 20–2002A. Therefore, it is a Commonwealth agency, over which we have appellate jurisdiction to review student disciplinary proceedings. *See* Section 763 of the Judicial Code, 42 Pa.C.S. § 763.

the University scheduled a Judicial Board hearing to determine whether Ruane had violated the Student Code of Conduct. By written notice, the University informed Ruane of the date and time at which the Judicial Board had scheduled a hearing to adjudicate the charge that he had violated Regulation 3.1 prohibiting harassment, Regulation 3.2 prohibiting threatening behavior, Regulation 3.7 prohibiting disorderly conduct and Regulation 3.8 prohibiting sexual assault. Three days prior to the hearing, Ruane and his legal counsel attended a pre-hearing conference and discussed the charges and the hearing procedure with the Dean. Two days prior to the hearing, Ruane received a copy of Morris's e-mail detailing the offensive behavior. At the hearing on December 11, 2003, both Morris and Ruane attended with their respective "friendly advisers" as permitted under the school's written judicial process. Morris attended the hearing with the Director of the Women's Center and Ruane with Joseph Ruane, an attorney. Morris testified, authenticating her e-mail, confirming the accuracy of the statements therein and answering questions from Travis Ruane. In rebuttal, Ruane introduced testimony from three fellow students, but he did not testify in his own behalf.

On December 23, Dean Serr announced the Board's decision in a letter to Ruane, stating in pertinent part, as follows:

After hearing the facts of the case, and following thorough deliberation, the members of the University Judicial Board found you in violation of Community Regulations 3.2 and 3.8. This decision was made because the individuals judging your case believed that Ms. Morris provided enough specific information to make her account plausible. In contrast, the information provided by you and your witnesses was neither substantial nor specific. The members of

the Judicial Board also believed that your use of alcohol both before and at the party impaired your judgment, while it was never substantiated that Ms. Morris was consuming alcohol.

As a result, the following sanctions and stipulations were levied. Please understand that these sanctions and stipulations took into consideration your previous violations of the student code of conduct.

Suspension: Effective Spring Semester 2004, you are suspended from Shippensburg University for two years. You may return to classes, provided you fulfill the following stipulations for Spring 2006 classes.

You are to have no contact of any kind with Ms. Morris henceforth.

You are not allowed on campus during your period of suspension.

You must provide proof from a licensed therapist that you received an assessment to determine whether you have dependence and/or abuse issues related to drugs and/or alcohol. If it is determined that such issues exist, you will be required to prove that you successfully completed therapy to address such issues.

The letter further informed Ruane that he could seek review of this decision by an Appeals Board.

In a letter, Ruane appealed the decision, challenging the sufficiency of evidence to support the Board's finding and contending that the hearing did not comport with due process. Specifically, Ruane alleged that the Board scheduled the hearing and provided notification thereof without affording him sufficient time to prepare a response. Ruane further asserted that the Board should have granted his request for a continuance due to pending final examinations and the associated difficulty of se-

curing witnesses, the unavailability of his lawyer (an associate in the same firm as the attorney who did accompany Ruane) and the necessity that he not testify before the Board in order not to jeopardize his right to avoid self-incrimination while criminal charges were pending. Dr. Harpster, the Vice President for Student Affairs, agreed to reconvene the Board to receive additional testimony. At the reconvened hearing, only Ruane testified and answered questions from Morris. Thereafter, in a letter dated May 7, 2004, Dr. Harpster notified Ruane that the Board had sustained the original decision but modified the two-year suspension to begin in May of 2004 and permit Ruane's return to classes in the fall of 2006. After Ruane filed a second appeal letter with the school, Dr. Harpster stated in a letter dated May 25, 2004, that the Board's confirmation of the original decision ended the school's appeal process. Ruane promptly filed the present appeal on June 1.

■ In summarizing his arguments, Ruane asserts that the Board's process was fundamentally unfair insofar as it based its decision on "wholly unsubstantiated factual findings, confusion about the Board's standard of review, improper and prejudicial evidentiary rulings, obstruction of Ruane's right to cross examine witnesses." Without question, prior to the imposition of disciplinary sanctions, Ruane was entitled to a measure of due process comporting with basic principles of fundamental fairness. At a minimum, the University had to provide Ruane with notice of the charges and some opportunity for a hearing. *See Boehm v. Univ. of Pennsylvania Sch. of Veterinary Med.*, 392 Pa.Super. 502, 573 A.2d 575, 578–79 (1990). However, the University was not obligated to provide a "full-dress judicial hearing," subject to the rules of evidence or representation by counsel. *Id.* Specifically, in

this Commonwealth, State universities must adhere to the elements of procedure set forth in 22 Pa.Code § 505.3. In summary, Section 505.3 calls for advanced written notice of both the charges and the date, time and place of the hearing, an opportunity to submit written, physical or testimonial evidence and to question witnesses, sufficient time to prepare a defense, an impartial hearing body, maintenance of a written summary or audiotape record of the hearing, a decision based on a preponderance of evidence, a written decision stating facts and reasons within 30 days and allowance for the student parties to bring an advisor to the hearing. In the present case, the University had established written procedures that complied with these requirements. Inasmuch as the University adhered to these procedures, Ruane suffered no deprivation of due process.

■ Before the Board, the parties' presented conflicting testimony regarding the critical fact as to whether Morris consented to the sexual contact, which neither party disputes occurred. It was solely for the Board to resolve this conflict by determining the credibility and weight of the testimony. *See Kusnir v. Leach*, 64 Pa. Cmwlth. 65, 439 A.2d 223, 226 (1982). Our review does not encompass revisiting the facts found by the Board unless the record lacks evidence to support those facts. *Id.*

■ Ruane asserts that the Board erred in relying on Morris's e-mailed account of the evening's events because that e-mail was hearsay. First, Ruane, who was accompanied by an attorney, did not raise this objection at the hearing and therefore it is waived. *See Jackson v. Indiana Univ. of Pennsylvania*, 695 A.2d 980, 981 (Pa.Cmwlth.1997). Second, Morris, under oath, adopted the written statement as an accurate description of the events and answered questions on cross-

examination regarding her statement. Assuming arguendo, that this is hearsay at all, Morris's evidence did not suffer from the sort of questionable reliability that is commonly understood to undermine the probative value of hearsay. Finally, on cross-examination, Morris essentially reiterated the statements in her e-mail and specifically testified that Ruane began kissing her, she told him to stop, he placed his hand over her mouth, pushed and trapped her against a kitchen counter, pulled her shirt up and fondled her breasts while she unsuccessfully attempted to push him away and again told him to stop. Therefore, the e-mail was merely cumulative of her testimony. Her testimony alone constitutes sufficient evidence to support the Board's findings, and the Board did not err to the extent that it may have given the e-mail report its natural probative effect. *See Walker v. Unemployment Comp. Bd. of Review,* 27 Pa. Cmwlth. 522, 367 A.2d 366, 370 (1976).

There is no merit in Ruane's contention that the Board erred in refusing to entertain his questions as to whether Morris attempted to thwart the assault by slapping, punching or scratching or whether Morris and her girlfriends had flirted. The Dean properly refused to permit these questions as insufficiently probative on the issue of sexual contact and consent therefore.

■ There is also no merit in Ruane's contention that the Board demonstrated bias in questioning him about his alcohol consumption on the evening at issue. Evidence regarding possible intoxication is relevant to Ruane's judgment at the time of the incident and his capacity to recall the events. In addition, the Board's reference to Ruane's prior disciplinary sanctions for two incidents of underage drinking did not demonstrate bias. The Board considered the prior violations only in connection with its determination as to the appropriate sanctions for the present offense. The prior transgressions were never mentioned during the hearing and there is no indication in the record that these violations were considered in determining whether Ruane committed the instant offense. Indeed, in the letter announcing the Board's decision, Dr. Harpster stated, "Your prior violations were only disclosed to the members of the Judicial Board after they made their determination about you being in violation or not in violation of the respective charges."

■ Finally, to the extent, as Ruane contends, that the Board may have considered the evidence under a clear and convincing standard of proof, this error is harmless inasmuch as the proper standard, a preponderance of the evidence, requires a lesser quantum of proof.

Accordingly, we affirm.

### ORDER

AND NOW, this 2nd day of February, 2005, the order of Shippensburg University in the above captioned matter is hereby AFFIRMED.