**David J. AGOSTINO, Appellant**

v.

**TOWNSHIP OF COLLIER.**

Commonwealth Court of Pennsylvania.

Argued Jan. 27, 2009.

Decided March 26, 2009.

Ronald P. Koerner, Bethel Park, for appellant.

W. Timothy Barry, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, and PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

David J. Agostino (Agostino) appeals from the order of the Court of Common Pleas of Allegheny County (common pleas court), which affirmed the decision of the Civil Service Commission of the Township of Collier (Commission) to grant Agostino an Honorable Discharge.

Agostino became a Township of Collier (Township) police officer in July of 1998. The Township is a First Class Township duly organized under the First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55101–58502. On August 15, 2004, Agostino was seriously injured in an off-duty motorcycle accident. As a result, he lost his sense of smell.[1]

Agostino returned to duty as a patrol officer on July 31, 2006. Prior to his return to duty, Agostino passed a physical exam arranged by the Township. During the exam, the physician neither tested Agostino's sense of smell nor questioned him about it. Agostino was stationed in an administrative capacity until he was certified by the Municipal Police Officers' Education and Training Commission (MPOETC) physical performance criteria to serve in the field. Once Agostino was re-certified he patrolled with another officer, John Andrea, for approximately one month. Agostino then returned to full duty.

By letter dated October 10, 2006, the Executive Board of the Collier Township Police Association (CTPA) reported to Chief Dan Rearick (Chief Rearick) that Agostino informed several police officers that he had lost his sense of smell as a result of his motorcycle accident. Because of Agostino's inability to smell, the CTPA was concerned about Agostino's ability to safely perform his police duties and the potential threat to the safety of other police officers, first responders, and the general public.

A Notice of Honorable Discharge, dated March 15, 2007, notified Agostino that the Township Board of Commissioners had voted at a public meeting on March 13, 2007, to honorably discharge him from service with the Township. Agostino was Honorably Discharged on the ground that he was physically unable to perform his police duties because of he lacked a sense of smell. The Honorable Discharge was based upon Agostino suffering from a "physical or mental disability affecting his ability to continue in service," pursuant to Section 644(1) of the First Class Township Code,[2] 53 P.S. § 55644(1), and Section 6.1(a)(1) of the Collier Township Civil Ser-

---

1. Agostino's olfactory system was affected to the extent that he was left without any ability to smell, a condition known medically as Anosmia.

2. Section 644(1) of the First Class Township Code provides, in relevant part:

No person employed in any police or fire force of any township shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service, in which cases the person shall receive an honorable discharge from service. . . .

vice Rules and Regulations [3], on the ground that his inability to smell rendered him unfit to perform the duties of a police officer.

Agostino appealed and a hearing was held before the Commission on July 19, 2007. On October 3, 2007. The Commission made the following findings of fact:

1. Officer David Agostino does not deny, and in fact, admits that he is unable to smell....

....

4. Exhibit 2 of the Township, a letter of Dr. Carl H. Snyderman of the University of Pittsburgh Physicians University Ear, Nose & Throat Specialists ... states, in addition to noting that the officer [Agostino] suffered a 'complete loss of smell' that: 'The majority of patients do not recover olfactory function in such situations. I do no think there is any potential for further recovery of function....'

5. ... [A] letter of Officer Rick Lamb to then Chief of Police of Collier Township, Daniel Rearick, stated the beliefs of members of the ... [CTPA] and other police officers, of their concern regarding a 'potentially dangerous situation....'

He cited the dangers associated with the performance of duty by a police officer who lacks a sense of smell and stated that the 'sense of smell is crucial to the everyday tasks of a police officer, no matter where they are employed.' He referred to instances where the sense of smell is essential and suggested situations where there are hazardous material spills, natural gas and propane leaks and ruptures that required immediate attention, DUI and drug instances requiring in-

stant action, and the fact that officers are often the first on the scene at accidents where a keen sense of smell can mean the difference between life and death....

6. The Township ... introduce[d] a series of police incident reports, which ... involved Officer Agostino, or incidents in which, had Officer Agostino been involved, he would not have been able to respond properly. These reports provided incidents and the consequences of not being able to identify the smell of alcohol on drivers who had been apprehended for speeding, etc. Other incident reports illustrated the apprehension of, and arrest of persons arising from the detection by smell of marijuana....

7. The Chief of Police of Dormont Borough, a community near the Township ..., Chief Russell J. McKibben explained ... his review of the hypothetical situation presented to him by counsel for the Township....

....

He concluded ... that 'I see no possible way that the individual [Agostino] can perform the essential functions of his job....'

8. Acting Chief of Police of Collier Township, Thomas D. Devin testified.... He further discussed the schedules of the police officers of the Township and the continuous need for officers to fill the time frames due to vacations, holidays, sickness, etc.

He noted that 2 officers were required to be on duty as a minimum at all times, that at present the township had 13 police officers, and discussed the fact that ... Township Police served as first responders in most in-

**3.** Section 6.1(a)(1) of the Collier Township Civil Service Rules and Regulations contains the same provisions as Section 644(1) of the First Class Township Code.

cidents ... He further opined the need of these officers to be able to smell in most, if not all of their duties....

9. Officer Agostino testified.... He did not deny his disability and admitted that he was unable to smell. He averred that he is able to conduct the duties of a police officer and that he can compensate for his inability to smell. He suggested that he can detect a DUI by observing the walk or gait of a subject, that he can observe fuel and gas emergencies by seeing smoke, and other visual observations. He testified that no officers had complained to him about his lack of sense of smell ... and further suggested that there were other duties he could perform without being dismissed.

10. The Commission hereby adopts the testimony given to it by the various township witnesses, and the observations contained in the various written reports as set out in Paragraphs 1 through ... 8 above. It finds that the conclusion of the Police officers themselves, the Acting Chief of Police, the facts and opinion submitted by Chief McKibben demonstrate the need of the sense of smell in instances where the police officer is the first responder, or/and where the officer is the person responsible for determine [sic] the propriety of further investigation or arrest.

11. Furthermore, the Commission was not impressed with the opinion of Officer Agostino that he does not require a sense of smell to perform his duties....

Decision of the Civil Service Commission of the Township of Collier (Commission Decision), October 3, 2007, Findings of Fact (F.F.) Nos. 1, 4–11 at 3–7; Reproduced Record (R.R.) at 12a–16a. The Commission concluded that the Township presented sufficient evidence to support its decision to honorably discharge Appellant. Agostino appealed to the common pleas court, which affirmed.

■ On appeal,[4] Agostino contends that the Commission erred: (1) in arbitrarily and capriciously disregarding evidence that he was able to perform his police duties at all times by compensating for his loss of sense of smell; (2) in accepting the opinion testimony of various witnesses who appeared before the Commission; (3) in arbitrarily and capriciously disregarding the fact that a sense of smell is neither listed as an essential function in the job description of a police officer as outlined by the MPOETC, nor tested as part of any physical examination required to become a police officer; and (4) in using the preponderance of evidence standard instead of the substantial evidence standard of proof.

### Whether the Commission Arbitrarily and Capriciously Disregarded Evidence that Agostino was able to Perform his Police Duties.

■ Agostino contends that the Commission erred when it arbitrarily and capriciously disregarded evidence that he was able to effectively perform his police duties.

■ This Court will only overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material

4. This Court's review of an adjudication of a municipal civil service commission is limited to determining whether there has been a violation of constitutional rights, an error of law, noncompliance with local agency law or if any factual finding necessary to support the adjudication is not supported by substantial evidence. *Moore v. Borough of Ridley Park,* 135 Pa.Cmwlth. 555, 581 A.2d 711 (1990).

facts, or so otherwise flawed, as to render it irrational. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 328 652 A.2d 797, 800 (1995). A capricious disregard of evidence exists only "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Station Square Gaming L.P. v. Pennsylvania Gaming Control Board*, 592 Pa. 664, 673, 927 A.2d 232, 237 (2007) (quoting *Arena v. Packaging Systems Corporation*, 510 Pa. 34, 38, 507 A.2d 18, 20 (1986)).

At hearing, Agostino testified that his "other senses sufficiently compensate[d] for ... [his] lack of smell ... [and he] can perform ... [his] duties in a proper and safe fashion." Testimony of David J. Agostino (Agostino Testimony), July 19, 2007, at 160; R.R. at 179a. Furthermore, Agostino was never accused of being unable to fully perform his duties as a police officer. There was no evidence the he failed to detect the odor of natural gas, failed to smell a fire, failed to smell gasoline or failed to make a DUI arrest based on his Anosmia. Agostino contends that the Township relied solely on hypothetical scenarios that never occurred while he was on duty. Agostino offered no additional evidence or testimony on point.

At hearing, the Township introduced various medical reports, the statements and testimonies of Township police officers, the testimony of a Chief of Police of a municipality in close proximity to the Township, which included a hypothetical review of the issues involved, police reports prepared by Agostino and others, and the testimony of the current Acting Chief of Police who outlined the events that led to Agostino's Honorable Discharge and to establish that Agostino suffered from a disability that affected his ability to continue his service as a police officer. The Township pointed to several instances where Agostino's inability to smell impeded his performance. Also, the Township identified other instances where Agostino would likely risk personal injury to himself and fellow officers and to the general public.

The Commission determined that the Township presented competent, credible and persuasive evidence which demonstrated that Agostino's ability to effectively perform his job was impaired. The Commission expressly considered Agostino's testimony and found it neither credible nor persuasive. The Commission noted that Agostino's testimony was inconsistent.[5]

Scrutiny of the record reflects that the Commission relied upon competent, credible evidence and testimony that established that Agostino lost his sense of smell, that his loss was permanent and that the ability to smell was a critical component for a police officer in the performance of his duties and that a loss of sense of smell hindered a police officer's ability to perform his duties. Substantial evidence supported the Township's Honorable Discharge of Agostino.

5. The Commission aptly noted Agostino's inconsistent testimony. Commission Decision, at 8 n. 2; R.R. at 17a. During direct examination Agostino testified that "[s]ense of smell is the last thing that I had ever used to determine [if] a person [was] driving while intoxicated or affected by some other chemical means." David J. Agostino Testimony (Agostino Testimony), July 19, 2007, at 160; R.R. at 179a. During re-direct, Agostino conceded that prior to his injury, sense of smell was "one of the many things ..." used by him to determine probable cause for a DUI charge. Agostino Testimony, at 181–182; R.R. at 200a–201a.

### Whether the Commission Erred in Accepting the Opinion Testimony of Township Witnesses.

Agostino argues that the Commission erred in accepting the opinions of the Township witnesses, including: Officer Richard Lamb (Officer Lamb), Chief Thomas D. Devin (Chief Devin), Chief Russel J. McKibben (Chief McKibben), and Carl H. Snyderman, M.D., FACS (Dr. Snyderman).

■ First, Agostino contends that the Commission erred in accepting Officer Lamb's testimony because he was not qualified as an expert on sense of smell. Further, Officer Lamb's opinion interfered with the Commission's responsibility to evaluate the importance of Agostino's sense of smell.[6]

Officer Lamb testified as a fact witness about a specific instance in which Agostino's inability to smell interfered with his ability to perform his job duties. On October 31, 2006, Agostino was involved in a high speed automobile chase. Agostino apprehended the driver. Officer Lamb arrived at the scene and asked Agostino whether the driver was under the influence of drugs or alcohol. Agostino informed Officer Lamb that he was unable to smell. Testimony of Officer Richard Lamb (Testimony of Officer Lamb), July 19, 2007, at 37; R.R. at 56a. Officer Lamb then determined whether an odor of alcohol or marijuana emanated from the suspect.

This Court is of the opinion that the Commission properly concluded that Officer Lamb's testimony was of a highly probative value and that, as a fact witness, he offered appropriate testimony based on his personal knowledge that assisted the Commission. See Pa.R.E. 701.[7]

■ Second, Agostino argues that Chief Devin did not have any special expertise or training regarding the sense of smell and was not qualified to give an opinion.

Chief Devin, the Acting Chief of the Township Police Department, testified, as a fact witness, that there were occasions when a Township police officer must work alone. Chief Devin testified:

Q. [Counsel] Again, my question was it is the policy of the police department to have two police officers on duty at all times; is that correct?

A. [Chief Devin] Yes, it is.

Q. That would be two police officers in two separate police cars; is that correct?

A. Yes.

. . . .

Q. They would be, in fact, patrolling different areas of the Township within the 13 square miles, is that correct?

A. Yes, it is.

Testimony of Chief Thomas D. Devin (Testimony of Chief Devin), July 19, 2007, at 52; R.R. at 71a. Chief Devin approximated that about forty percent of the time there are only two police officers working within the Township. Testimony of Chief Devin, 54; R.R. at 73a. Chief Devin further indicated that the patrol duties of

---

6. Agostino offered no factual or legal support for this argument.

7. The rule of evidence provides:
 Rule 701. Opinion Testimony by Lay Witnesses.
 If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

police officers included acting as first responders on the scene of any kind of emergency or public safety call, that a patrol officer may be the only police officer at the scene of the emergency, and the ability to smell is a critical component of such police work. Testimony of Chief Devin, 54–55; R.R. at 73a–74a.

Chief Devin also identified a specific instance where Agostino's inability to smell potentially endangered himself and others. Agostino was dispatched to the aid of an elderly resident whose furnace malfunctioned. Without being able to smell, Agostino checked the furnace and replaced the access panel and the furnace immediately ignited and turned on. Chief Devin explained that Agostino's inability to smell if the furnace was leaking gas created a hazardous situation placing Agostino, the resident and the public in danger because "it could have possibly caused an explosion...." Testimony of Chief Devin, at 61–62; R.R. at 80a–81a.

This Court is of the opinion that the Commission properly accepted Chief Devin's opinion. *See* Pa.R.E. 701.

■ Third, Agostino contends that Chief McKibben did not have the requisite expertise or training qualifying him to give an opinion regarding sense of smell. To this extent, Chief McKibben agreed that he was not testifying as an expert on the sense of smell. Chief Russel J. McKibben Testimony (Testimony of Chief McKibben), July 19, 2007, at 97; R.R. at 116a.

Chief McKibben, however, was asked to give his "professional opinion regarding the possibility of a police officer diagnosed with Anosmia being able to continue as a

patrol officer in a relatively small ... police department." Chief Russel J. McKibben Expert Report (Chief McKibben Report), March 5, 2007, at 1; R.R. at 346a. In this regard, Chief McKibben testified he was the Chief of Police of the Borough of Dormont and President of the Western Pennsylvania Chiefs of Police Association, and that he was very familiar with the daily duties and essential functions of a municipal police officer in a police department similar to that of the Township. Chief McKibben, therefore, testified as a qualified expert witness possessing specialized knowledge about the functioning and operation of a similar police department and the requirements and job duties of such police officers'. *See* Pa.R.E. 702.[8]

Chief McKibben's opinion was predicated upon three assumptions:

1. The officer [Agostino] works regular patrol and predominantly in a single-man car.

2. The officer is not permanently assigned as an investigator or in a similar support capacity.

3. The officer is not strictly in an administrative position with no initial responder requirements.

Chief McKibben Report at 1; R.R. at 346a. In his expert opinion, Chief McKibben concluded:

[I]t is my professional opinion that the *inability to smell is a serious deficiency that would indeed impair an individual's ability to perform the duties of a police officer.* It is imperative that an officer involve the use of all physical sensory organs—including sense of smell—to perform the essential func-

8. Rule 702. Testimony of Experts.
 If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

tions of the position. How else would an officer;

— Identify the smoke from a burning house on routine patrol?

— Realize and properly warn that an odor of natural gas was filling an apartment complex or threatening the vicinity of an underground leak?

— Make the necessary precautions to keep sparks from igniting the fuel soaked- interior at the scene of a vehicular accident?

— Identify marijuana was being smoked at any call or location where this would lead to probable cause for further investigation?

— Recognize that drivers, juveniles and domestic combatants had been drinking alcoholic beverages?

— Identify any other clear but odor laden dangerous chemical? (Emphasis added).

Chief McKibben Report, at 1–2; R.R. at 346a–347a.

■ Lastly, Agostino argues that the Commission erred in accepting Dr. Snyderman's opinion that Agostino's Anosmia was permanent because his report ambiguously stated that "the majority of patients do not recover olfactory functions in such situation." Carl H. Snyderman, MD, FACS, Medical Report Letter (Dr. Snyderman Medical Report), February 16, 2007; R.R. at 245a. Additionally, Dr. Snyderman was "unable to provide an opinion regarding his [Agostino's] ability to perform his job functions." Dr. Snyderman Medical Report; R.R. at 245a.

The Commission relied on the undisputed medical opinion of Dr. Snyderman. Contrary to Agostino's argument, Dr. Snyderman's expert report unequivocally established that Agostino lacked the ability to smell and there was no potential for further recovery:

In my opinion, he [Agostino] has posttraumatic anosmia [complete loss of smell] which is very likely related to his closed head injury. In such situations, there is a shearing effect of the brain at the skull base where the olfactory filaments enter the skull base. The majority of patients do not recover olfactory function in such situations. *I do not think there is any potential for further recovery of function.* (Emphasis added).

Dr. Snyderman Medical Report at 1; R.R. at 245a. Agostino did not object to Dr. Snyderman's report at the hearing, and he did not offer any evidence to contradict or demonstrate the possibility that he would regain his sense of smell.

Dr. Snyderman properly testified as a qualified expert witness. *See* Pa.R.E. 702.

A review of the record reflects that the Commission properly credited evidence which established that Agostino lost his sense of smell, that his loss was permanent, that the ability to smell was a critical component for a police officer in the performance of his duties and that a loss of sense of smell could hinder a police officer's ability to perform his duties especially given that Agostino patrols alone and served as a first responder. Based upon the competent and sufficient evidence of record, this Court discerns no error in the Commission's decision to affirm the Township's Honorable Discharge of Agostino.

### Whether the Commission Arbitrarily and Capriciously Disregarded the MPOETC's List of Essential Functions.

■ Agostino contends that the Commission arbitrarily and capriciously disregarded the fact that a sense of smell is neither listed by MPOETC as an essential function in the job description of a police officer nor tested as part of any physical

examination required to become a police officer.

Agostino argues that his sense of smell was not tested before he returned to duty in July 2006. Chief McKibben confirmed that although MPOETC has specific requirements of vision and hearing, it does not specifically address the a sense of smell. Testimony of Chief McKibben, at 127; R.R. at 146a. Chief McKibben further testified that MPOETC does not require a police officer to be tested for a sense of smell prior to employment and that no police department, including his own in Dormont Township, tests a police officer for sense of smell prior to employment. Testimony of Chief McKibben, at 130; R.R. at 146a. Agostino contends that the failure of MPOETC and the Township to test for sense of smell indicated that it was not considered as important as other senses, such as vision or hearing.

 The MPOETC rules and regulations, as set forth in 37 Pa.Code 203.1, are administrative regulations promulgated pursuant to 53 Pa.C.S. § 2164. The MPOETC's administrative regulations are separate from Section 644(1) of the First Class Township Code, which authorizes municipalities to discharge police officers. The Commission decided to Honorably Discharge Agostino based upon Section 644(1) of the First Class Township Code. See Venneri v. Moon Township Board of Supervisors, 53 Pa.Cmwlth. 456, 417 A.2d 1326 (1980) (Holding that dismissal of a township police officer because of physical disability, missing 199 days of work due to illness, was proper.). Section 644(1) of the First Class Township Code is not limited by MPOETC's administrative regulations which only set forth minimum standards for the physical and psychological fitness of municipal police officers.

Additionally, Chief McKibben stated in his report MPOETC did not attempt to "enumerate every possible condition that could preclude employment as a police officer." Chief McKibben Report, at 2; R.R. at 347a. Aside from the essential functions identified by the MPOETC, the regulations include a catch-all provision that requires all police officers to be "free from any other significant physical limitations or disabilities, which would, . . . impair the applicant's ability to perform the duties of a police officer or complete the required minimum training requirements." 37 Pa. Code 203.11(a)(6)(viii).

The language of MPOETC is open-ended and includes disabilities that may preclude an applicant from employment as an officer. Here, Agostino's Honorable Discharge conformed to the requirements of MPOETC because substantial evidence established his inability to smell was a physical limitation that impaired his ability to perform the duties of a police officer.

### Whether the Commission Erred in using the Preponderance of Evidence Standard.

 Agostino also argues that the Commission erred in using the preponderance of evidence standard proof.[9] Agosti-

9. The Commission concluded:
1. The . . . Commission's standard of review in this matter is to determine whether sufficient evidence has been presented to support the reason for the action. . . .
2. The Commission believes, and so finds, that the preponderance of evidence as discussed in the findings of fact supra, i.e. the expert testimony of the medical exam-

iner, and the testimony of the Chief of Police of the Borough of Dormont, as well as the testimony of the Acting Chief of Police of the Township . . . and the failure of the Officer [Agostino] to respond in any manner (other than his oral testimony denying that his physical infirmity prohibited him from performing police work) were more than sufficient to

no contends that although he was not charged with misconduct, his employment was terminated; therefore, the Commission should have used the substantial evidence standard of proof instead of the preponderance of evidence standard.

 In *Commonwealth v. Roy L. Williams,* 557 Pa. 207, 732 A.2d 1167 (1999), our Supreme Court explained what the preponderance of evidence standard of proof requires. The preponderance of evidence standard requires proof "by a greater weight of the evidence." *Id.* at 1187. The standard was further explained by this Court in *Commonwealth v. McJett,* 811 A.2d 104, 110 (Pa.Cmwlth.2002) (citations omitted): "Preponderance of the evidence is tantamount to a 'more likely than not standard.' ... Proof by a preponderance of the evidence is 'often alluded to as a weighing of the evidence and a determination based upon which way the mythical scales are tipped.' "

 Likewise, the substantial evidence standard is not a standard of proof as suggested by Agostino; rather, it is a standard of review. In *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta),* 749 A.2d 1021, 1024 (Pa.Cmwlth.2000), this Court defined the substantial evidence standard of review as requiring such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta),* 749 A.2d 1021, 1024 (Pa.Cmwlth.2000). When performing a substantial evidence analysis, the evidence must be viewed in a light most favorable to the party who prevailed before the fact finder. *Id.*

warrant the actions taken by the Board of Commissioners.
. . . .

Here, a review of the record indicates that where there was an agency finding in administrative proceedings the applicable standard of proof is the preponderance of the evidence. In *Suber v. Pennsylvania Commission on Crime and Delinquency,* 885 A.2d 678, 681–83 (Pa.Cmwlth.2005) this Court stated:

The standard or burden of proof in a particular type of proceeding is based upon the level of concern regarding the degree of accuracy in the factual findings made by the trier of fact. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The traditional 'preponderance of the evidence' standard allows parties-usually engaged in a civil dispute best settled by monetary compensation-to share equally the risk in proving their claims and affirmative defenses. Any other standard expresses a preference for one side's interests. Cases in which one party has accused another of a civil wrong with more severe implications, such as fraud, require proof by clear and convincing evidence. Finally, in a criminal case, almost the entire risk of error is placed upon the state which is required to prove the guilt of the accused beyond a reasonable doubt.

. . . .

Like civil actions, the normal burden of proof for most administrative actions is the preponderance of the evidence standard. *Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission,* 134 Pa.Cmwlth. 218, 578 A.2d 600 (1990), *petition for allowance of appeal denied,* 529 Pa. 654, 602 A.2d 863 (1992); *see also North American Coal Corporation v. Air Pollution Commission,* 2 Pa. Cmwlth. 469, 279 A.2d 356 (1971).

Commission Decision, Conclusions of Law (C.L.) Nos. 1–2 at 6–7; R.R. at 16a–17a.

. . . .

More apropos is our recent decision in *Ruane v. Shippensburg University*, 871 A.2d 859 (Pa.Cmwlth.2005), where a student was suspended for sexual assault. In that case, we held that the proper standard was not the clear and convincing standard of proof, but the 'by a preponderance of the evidence' standard. In *Boguslawski v. Department of Education*, 837 A.2d 614 (Pa.Cmwlth. 2003), where a teacher's teaching certificate was revoked under the Professional Educator Discipline Act . . . we specifically re-affirmed *Lansberry* concluding that preponderance of the evidence was the correct standard to be applied in teacher discipline cases. Because the interests here are no more substantial than the interest expressed in either *Ruane* or *Boguslawski* or in other employee discipline cases, the Board correctly applied the preponderance of the evidence standard of proof to this proceeding.

Additionally, Section 754 of the Administrative Agency Law, 2 Pa.C.S. § 754, indicates that it is the appellate court, in reviewing the determination of the municipal civil service commission, and not the fact-finding body, that applies the substantial evidence standard of review.

Consequently, Agostino's argument that the Commission should have used the substantial evidence standard of proof set forth in *Township of Fairview v. Saxe*, 73 Pa.Cmwlth. 161, 457 A.2d 1014 (1983) is misguided and erroneous. The applicable standard of proof is preponderance of evidence, which the Commission correctly applied. Sufficiency of the evidence, the substantial evidence burden, is different. First, there must be substantial evidence; then the question is whether the evidence is persuasive.

Section 644(1) of the First Class Township Code permits the Honorable Discharge of a police officer who is physically or mentally unable to perform his duties. This Court finds no error in the Commission's conclusion that Agostino's Honorable Discharge was appropriate because the evidence sufficiently demonstrated that Agostino suffered a physical disability that rendered him unfit to serve as a police officer. Critically, Agostino frequently patrolled alone and served as a first responder in instances that required a sense of smell to ensure his safety and the safety of others.

Accordingly, this Court affirms.

### O R D E R

AND NOW, this 26th day of March, 2009, the Order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.