# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela White,                          :
                    Appellant          :
                                       :
        v.                             : No. 308 C.D. 2018
                                       : ARGUED: June 3, 2019
School District of Philadelphia        :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: June 25, 2019

Angela White appeals from the February 5, 2018 Order of the Court of Common Pleas of Philadelphia County (Trial Court) denying Ms. White's appeal of a decision of the School District of Philadelphia School Reform Commission (Commission). The Commission adopted a Hearing Officer's recommendation to dismiss Ms. White from her employment with the School District of Philadelphia (School District) for improper conduct pursuant to Section 514 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 5-514.[1] For the reasons that follow, we affirm the Trial Court's Order.

---

[1] Section 514 of the School Code states that a school district "shall after due notice, giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employees, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct." 24 P.S. § 5-514.

## Background

Ms. White worked for School District from 2005 until May 12, 2016.[2] Most recently, Ms. White was Program Coordinator for School District's Office of Athletics. One of Ms. White's responsibilities in that position was to work with Athlete Health Organization (AHO), a Philadelphia-based non-profit organization that provides free health screenings to student athletes in partnership with School District. Ms. White worked with AHO to find physicians, select event locations, and coordinate screenings for School District students.

In 2016, School District's Inspector General began investigating the finances of the Office of Athletics. As part of the investigation, the Inspector General examined expenditures from bank accounts maintained by the Office of Athletics and its Executive Director, Robert Coleman, who was Ms. White's immediate supervisor.[3]

The investigation revealed that, between April 4, 2013 and July 10, 2013, Mr. Coleman signed and issued four $2,500 checks to Ms. White, paying her a total of $10,000 from two School District accounts. Two of the checks were drawn from an account titled "Philadelphia Public League," and two of the checks were drawn from an account titled "PIAA District 12."[4] The Office of Athletics maintains both accounts, which contain funds for various athletic activities for School District students. Ms. White accepted and personally endorsed each of the

---

[2] Ms. White was laid off for a two-year period between 2011 and 2013.

[3] As a result of the investigation, School District dismissed Mr. Coleman for misappropriating School District funds.

[4] "PIAA" is the Pennsylvania Interscholastic Athletic Association.

four checks for deposit.[5]   School District made no wage deductions from those payments, and Ms. White did not report the $10,000 she received as income to the Commonwealth of Pennsylvania.

As a result of the investigation, School District reassigned Ms. White to its Records Office.  On March 30, 2016, Chief Academic Officer Susan Logan met with Ms. White and instructed her that, as of that date, Ms. White was prohibited from having any further contact or involvement with the Office of Athletics. Ms. Logan also sent an e-mail to all School District athletic directors and the PIAA, stating that Ms. White would no longer be conducting any business on behalf of School District or the athletics department.

On April 5, 2016, Ms. White e-mailed Andrew M. Rosen, School District's Employee Relations Deputy, and informed him that she was working part-time for AHO as its Executive Administrator and was preparing for two health screening events in partnership with School District.  In the e-mail, Ms. White also asked Mr. Rosen if she could continue working with AHO with the help of a School District

---

[5] The "memo" lines on the four checks contained the following handwritten notes:

- On check number 5884, dated April 4, 2013, the memo line stated, "January to June 2013 Manage and Develop Social Media & Web Site [sic] for AHO/PIAA Sports Physical."

- On check number 1189, dated May 6, 2013, the memo line stated, "COORDINATOR FOR SPORTS PHYSICALS (1/2 [Illegible])."

- On check number 1190, dated May 20, 2013, the memo line stated, "BALANCE DUE TO COORDINATOR FOR SPORTS PHYSICALS."

- On check number 1013, dated July 10, 2013, the memo line stated, "[Illegible] from AHO Sports Phys[ical]."

Notes of Testimony (N.T.), 10/28/16, Ex. D-1, at 4-7.

3

liaison before and after work hours. Mr. Rosen replied that he could not discuss the matter with Ms. White.

Ms. Logan began monitoring Ms. White's School District e-mails to ensure that she was complying with the directive to cease all involvement with the Office of Athletics. While monitoring Ms. White's e-mails, Ms. Logan discovered that Ms. White was still conducting business for AHO during School District work hours.

On May 5, 2016, Ms. Logan met with Ms. White and Mr. Rosen. During the meeting, Ms. White admitted that she had accepted four checks totaling $10,000 from Mr. Coleman and deposited them into her personal bank account. She stated that she believed she was entitled to the money because the payments were for work she performed for AHO and she should get paid. Ms. White also stated that she believed her work for AHO was different from her work for School District. Ms. White then described the scope of her work for AHO to Ms. Logan. Based on Ms. White's description, Ms. Logan determined that Ms. White's AHO work was part of her responsibilities as Program Coordinator for the Office of Athletics and that Ms. White had performed work for AHO during School District work hours, contrary to Ms. Logan's earlier directive.

By letter dated May 12, 2016, School District notified Ms. White that it was recommending her termination from employment for improperly receiving School District funds and for intentionally violating a School District directive. In the letter, School District stated:

> The ongoing investigation uncovered that in 2013, while an employee of [School] District, you were paid $10,000 in four (4) separate checks for work you did as part of your work.

4

It was also learned that since your transfer from the Office of Athletics and the direction to have no contact with [School] District's athletics program[], you continued to have continuing involvement in the program during your [School] District work day.

. . .

Employees cannot accept payment for work done by checks paid on office accounts. These payments were titled either PIAA District 12 or The Philadelphia Public League. They were all signed by the former Executive Director[, Mr. Coleman]. Paychecks received by [School] District employees are not signed by their managers. They do not get issued without deductions. You admitted that you did not receive a 1099 as would an independent contractor. [School] District has legal obligations when making payments regarding wages. Ms. Logan determined that your acceptance of these payments was not proper and a clear attempt to receive payment improperly.

The e[-]mails reviewed clearly show that you were working a good deal of time on AHO matters after being directed not to do that. The positive nature of the AHO mission does not excuse the insubordinate behavior by you.

Based on Ms. Logan's findings, the School District has chosen to terminate your employment for improper receipt of [School] District funds and intentionally violating a directive.

N.T., 10/28/16, Ex. D-1, at 1-2.

Ms. White appealed School District's decision and exercised her right to an evidentiary hearing before the Commission, which took place on October 28, 2016. Ms. White did not appear at the hearing, instead choosing to send her legal representative, Stephanie J. Mensing, Esquire, to cross-examine School District's

5

witness and present argument on Ms. White's behalf.[6]  Ms. Logan testified for School District.

Following the hearing, the Hearing Officer issued Findings of Fact and Conclusions of Law and recommended Ms. White's dismissal from employment. The Hearing Officer determined that School District presented substantial evidence to support Ms. White's dismissal for improper conduct under Section 514 of the School Code.  Specifically, the Hearing Officer concluded:

> [Ms. White] received and deposited four (4) checks from School District funds, for work she was already being paid to do and not entitled [sic] to any additional payment.  Said action is a willful violation of and a failure to comply with the school laws of this Commonwealth or otherwise improper conduct, constituting just cause for dismissal pursuant to [Section 514 of the] School Code.

> [Ms. White] was made fully aware of the directive to cease all future involvement with any Athletics Department activities and [she] willfully failed or refused to comply.  Said action constitutes improper conduct and just cause for dismissal, pursuant to [Section 514 of the] School Code . . . .

Comm'n's Conclusions of Law Nos. 12, 13.

On April 27, 2017, after an independent review of the record, the Commission approved the Hearing Officer's recommendation to dismiss Ms. White, effective April 27, 2017.  The Commission notified Ms. White of its decision by letter dated May 24, 2017.

---

[6] At the outset of the hearing, Ms. Mensing stated that "it was [Ms. White's] decision not to attend today" and that Ms. White "consent[ed] to having this hearing proceed without her being present." N.T., 10/28/16, at 5.  After questioning Ms. Mensing, the Hearing Officer stated: "It is my understanding that Ms. White has given [Ms. Mensing] the authority to represent her with her not being present and any rights [Ms. White] may be giving up because of that, that she is in a position to waive those rights." *Id.* at 7.

6

On June 20, 2017, Ms. White appealed to the Trial Court, asserting that the Commission's decision was unsupported by substantial evidence. On February 2, 2018, after argument by the parties, the Trial Court denied Ms. White's appeal. The Trial Court concluded that: (1) Ms. White engaged in improper conduct under Section 514 of the School Code; and (2) the record contained substantial evidence to support the Commission's finding of improper conduct. In so ruling, the Trial Court noted:

> Ms. White did not appear at the [Commission] hearing to offer any testimony to contradict that of the School District. . . . This Court is therefore limited to reviewing the evidence and testimony offered by the School District to determine whether a reasonable mind might accept that evidence and testimony as adequate to support the [Commission's] factual findings.

Trial Ct. Op., 9/13/18, at 8 (internal citation omitted). Ms. White now appeals to this Court.[7]

## Analysis

On appeal, Ms. White asserts that School District failed to establish by substantial evidence that: (1) Ms. White knew that the four checks at issue derived from School District funds; (2) Ms. White's work for AHO was part of her School District responsibilities in the athletics department; and (3) Ms. White knew that Ms. Logan's directive prohibited her from continuing to work for AHO.

Our Court has defined substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Ray v. Civil*

---

[7] This Court will not disturb a school district's employment decision "unless the record reveals a violation of constitutional rights, an error of law, or that [the] necessary findings of fact are not supported by substantial evidence." *Phillis v. Bd. of Sch. Dirs.*, 617 A.2d 830, 832 n.7 (Pa. Cmwlth. 1992).

7

*Serv. Comm'n*, 131 A.3d 1012, 1023 (Pa. Cmwlth. 2016) (citation omitted). The Commission, as the factfinder, "is the ultimate arbiter of questions of credibility and the weight to be given conflicting evidence." *Id.* (citation omitted). As such, a reviewing court may not re-weigh the evidence or substitute its judgment for that of the factfinder. *Id.* When performing a substantial evidence analysis, this Court must view the evidence "in a light most favorable to the party who prevailed before the fact[]finder." *Agostino v. Twp. of Collier*, 968 A.2d 258, 269 (Pa. Cmwlth. 2009).

### 1. Improper Receipt of School District Funds

First, Ms. White asserts that School District failed to establish that she knew the four checks at issue were drawn from School District funds. Ms. White contends that because the name "School District of Philadelphia" did not appear on any of the checks, she had no way of knowing that the funds derived from School District funds. We conclude that the record belies this claim.

Each of the four checks was drawn from an account identified as either "Philadelphia Public League" or "PIAA District 12." The record shows that both of these accounts were maintained by School District's Office of Athletics, where Ms. White worked. Ms. Logan explained the nature of the accounts as follows:

> The Public School League is . . . a legacy name from about 85 years ago. It's called the Philadelphia Public School League, but it is congruent – the nomenclature notwithstanding, it's the Philadelphia School District account for funds for athletics.

> In addition, the PIAA funds are received from the School District, from School District schools, from District charter schools, which are state-funded schools, and archdiocese schools. There are a small number of independent schools that also participate.

N.T., 10/28/16, at 16. According to Ms. Logan, "the funds [in both of these accounts] come[] from schools, charter schools, archdiocese schools and independent schools [with]in [School District]." *Id.* at 46.

Ms. Logan also testified that it is "well known" that "Philadelphia Public League" is synonymous with School District. She testified that, as Program Coordinator for the Office of Athletics, Ms. White would have been aware that "the Philadelphia Public League . . . is the School District of Philadelphia." *Id.* at 30. Ms. Logan further testified that "[i]n [Ms. White's] duties as [Program C]oordinator for athletics, I can't imagine any scenario where she wouldn't know" that a check drawn from an account identified as "Philadelphia Public League" was drawn from School District funds. *Id.* at 37. Significantly, Ms. White presented no evidence to contest Ms. Logan's testimony.

Furthermore, it is undisputed that Ms. White did not report the $10,000 she received as income to the Commonwealth of Pennsylvania. Although Ms. White was not discharged on that basis, her failure to report the money as income further supports the Commission's finding that Ms. White knew the actual source of the money and was attempting to conceal it.

We conclude that Ms. Logan's uncontroverted testimony, as well as the circumstances of Ms. White's job position, supports the Commission's finding that Ms. White knew that the checks at issue were drawn from School District funds.

Second, Ms. White asserts that School District failed to establish that the checks at issue constituted payments for work for which she was already compensated via her School District salary. Ms. White contends that the checks were payments for independent work she performed for AHO, not for School

9

District, and that her AHO work was separate from her School District work. We reject this claim.

The record shows that the checks at issue were not drawn from an AHO account, but from two accounts controlled by School District and maintained by Ms. White's supervisor, Mr. Coleman. The fact that Mr. Coleman – and not any representative of AHO – signed each of the checks belies Ms. White's claim that she believed the payments were compensation for "independent work" she performed for AHO. In fact, Ms. Logan testified that AHO reported to School District that Ms. White had worked for AHO on a volunteer basis only:

> Q. Did you ever contact AHO to find out if Ms. White had a legitimate position with them?
>
> A. Yes, we did.
>
> Q. What did you find out?
>
> A. . . . [T]he only thing that we were able to determine was that *she volunteered for [AHO] at some point. Those were the exact words that [AHO] used*.

N.T., 10/28/16, at 29 (emphasis added).

Finally, Ms. Logan testified that the work Ms. White performed for AHO was "congruent with her job duties" as Program Coordinator for the Office of Athletics. *Id.* at 26. Ms. Logan based this conclusion on Ms. White's own description of her AHO work, as well as on Ms. Logan's personal knowledge of Ms. White's job responsibilities in the Office of Athletics. This uncontroverted evidence supports the Commission's finding that Ms. White accepted $10,000 from her supervisor for work that School District was already paying her to do.

Therefore, we conclude that the record contains substantial evidence to support the Commission's conclusion that Ms. White improperly received School District funds when she accepted the four $2,500 checks from her supervisor and deposited them into her personal bank account.

## 2. Intentional Disregard of School District Directive

Ms. White asserts that the record lacks substantial evidence to support the Commission's conclusion that she intentionally disregarded a School District directive. Specifically, she claims that the factual findings regarding her contact with AHO following her transfer to the Records Office are "unrelated to any allegation that [Ms. White] violated a directive to cease contact and involvement with [School District's] Athletics Department during her workday at [School District]." Ms. White's Br. at 12. We disagree.

Ms. Logan testified that during her March 30, 2016 meeting with Ms. White, "when she mentioned her work with [AHO], I acknowledged that she worked with [AHO]." N.T., 10/28/16, at 34. However, Ms. Logan explained that as long as Ms. White remained a School District employee, she could no longer perform work for AHO with regard to athletics department matters. Specifically, Ms. Logan told Ms. White "that she was entitled to work outside of her workday, but that because she work[ed] for the School District of Philadelphia as an athletic representative, *she was no longer going to be able to do that.*" *Id.* (emphasis added). Ms. Logan further testified:

> [D]uring the meeting we discussed this, *because of the disposition of her employment, she was going to have an issue – she was going to have to make a determination because my directive was really clear in that she could not perform any duties as a representative of the athletics department* and that decision was something that was very clear from my standpoint and those were actions that she was going to

11

have to take because *she could not represent any portion of the athletics department here. So she has no utility to AHO if she is not representing the athletics department of the School District.*

*Id.* at 35 (emphasis added).

The evidence of record establishes that not only did Ms. White continue to have contact with AHO during the workday, but such contact directly related to athletics department matters. Ms. Logan testified that Ms. White sent 6 to 10 e-mails from her School District e-mail account "to different organizations and to representatives of AHO during work hours." *Id.* at 31-33, 42. According to Ms. Logan,

> [t]he e-mails were between the March 30th time that I spoke with [Ms. White] and the May 5th time that I spoke with her. Those were the times that we monitored the e-mails specifically related to my directive not to perform any functions or to make any representations for the athletics department of the School District.

*Id.* at 32. Ms. Logan testified that the e-mails "related to not just AHO but other business that was being conducted during the day in reference to . . . [t]he School District athletics department." *Id.* at 48. Ms. Logan concluded, based on her review of the e-mails, that Ms. White had performed work for AHO during her School District work hours.

It is also evident from the record that, even after Ms. White's transfer from the Office of Athletics, the health screening events she planned for AHO were *for School District athletes.* For example, in her April 5, 2016 e-mail to Mr. Rosen, Ms. White explained two of the events as follows:

> We have been preparing for our sports screening event scheduled for June 4th. There is also another screening event scheduled in Camden, NJ the week following as we are taking this model nationally. *Attached is the flyer and the forms that I updated that were sent to*

12

*Philadelphia Public, Charter, and Catholic schools* interested in participating in the event. *The forms will be returned back to the [School District] Office of Athletics by April 29th for me to get them back to the AHO Volunteer Physicians* to be prescreened.

N.T., 10/28/16, Ex. A-1, at 1 (emphasis added); *see id.*, Ex. A-2 at 6 (stating, in reference to the June 4, 2016 screening event, "This Free Sports Physicals Event is *Sponsored by the [School District] Office of Athletics & [AHO]*") (emphasis added).

Ms. White also contends that there is no evidence that she deliberately violated Ms. Logan's directive and any such violation was unintentional. Ms. White points out that on April 5, 2016, she reached out to Mr. Rosen because she was unsure if her continued AHO involvement would violate Ms. Logan's directive. However, School District determined "that [Ms. White's] contact with [Mr.] Rosen concerning her involvement with the AHO was evidence that [she] had some realization that the involvement was wrong." Comm'n's Finding of Fact No. 25. Moreover, "[t]he record is [de]void of any attempt by [Ms. White] to reach out directly to Ms. Logan for clarification on whether her AHO involvement would violate Ms. Logan's directive." *Id.* No. 24.

The Commission found that Ms. Logan directed Ms. White to cease all contact and involvement with School District's athletics department during her workday as of March 30, 2016. *Id.* No. 18. Despite this directive, the evidence shows that Ms. White continued to plan and orchestrate AHO screening events for School District athletes in direct partnership with the Office of Athletics. She continued to have interactions during the workday with the athletics department and other School District employees on athletics department matters. In light of this evidence, as well as Ms. Logan's uncontroverted testimony that Ms. White's work for AHO was "congruent with her job duties" in the athletics department,

13

N.T., 10/28/16, at 26, it is clear that Ms. White understood that her continued involvement with AHO during the workday violated School District's directive.

Therefore, we conclude that the record contains substantial evidence to support the Commission's finding that Ms. White intentionally violated a School District directive by performing work for AHO during her School District work hours after March 30, 2016.

### Conclusion

Viewing the evidence of record in the light most favorable to School District, *see Agostino*, 968 A.2d at 269, we agree with the Trial Court that the Commission's decision was supported by substantial evidence. Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Angela White,                        :
                    Appellant        :
                                     :
        v.                           :   No. 308 C.D. 2018
                                     :
School District of Philadelphia      :

# **O R D E R**

AND NOW, this 25th day of June, 2019, the Order of the Court of Common Pleas of Philadelphia County, entered on February 5, 2018, is hereby AFFIRMED.


_____
ELLEN CEISLER, Judge