**C.J., Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 8, 2008.

Decided Oct. 24, 2008.

Jeffrey J. Cole, Erie, for petitioner.

Jeffrey P. Schmoyer, Sr. Counsel, Pittsburgh, and Allen C. Warshaw, Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

The issue in this expunction appeal is whether an adjudication of dependency and finding of abuse under the Juvenile Act [1] bars a request for expunction from a founded report of child abuse under the Child Protective Services Law.[2] More par-

---

1. 42 Pa.C.S. § 6301–65.

2. 23 Pa.C.S. §§ 6301–85. The Child Protective Services Law mandates a statewide system for receiving reports of suspected child abuse, referring the reports for investigation and maintaining the reports. 23 Pa.C.S.

ticularly, C.J. (Stepfather) petitions for review of an order of the Department of Public Welfare (Department) dismissing his expunction appeal as moot under the doctrine of res judicata. In accord with our recent decision in *K.R. v. Department of Public Welfare*, 950 A.2d 1069 (Pa. Cmwlth.2008), we affirm.

Since 1996, A.T. (Child) lived with Stepfather and his daughter S.J. Stepfather is divorced from Child's biological mother; Child and S.J. are half-sisters.

In October 2004, the Erie County Office of Children, Youth and Families (OCY) filed an indicated report[3] of child abuse naming Stepfather as the perpetrator of abuse[4] against Child. In particular, OCY's investigation found Child credible when she reported Stepfather placed his penis in her hands and fondled her breasts on multiple occasions while Stepfather thought she was sleeping. Stepfather also made inappropriate comments to Child regarding her breasts, touched her buttocks and asked her to model newly purchased undergarments. Stepfather timely appealed the indicated report to the Bureau of Hearings and Appeals (Bureau).

In a corollary proceeding, OCY filed a dependency petition in the Court of Common Pleas of Erie County (trial court) alleging Child was dependent[5] and abused. After three days of hearings, a juvenile master recommended findings that Child is dependent and Stepfather abused her. Importantly, the trial court approved the recommendation in its entirety[6] and issued a separate order adjudicating Child

---

§ 6331. A report of suspected child abuse may be either "indicated," "founded," or "unfounded." In the case of "indicated" or "founded" reports, the information is placed in a statewide central register. 23 Pa.C.S. § 6338(a). Notice of the determination must be given to the perpetrator of the child abuse indicating his or her ability to obtain employment in child-care facilities may be adversely affected. *Id.*

3. An indicated report is issued after:

an investigation by the county agency or the [Department] determines that substantial evidence of the alleged abuse exists based on any of the following:
(1) Available medical evidence.
(2) The child protective service investigation.
(3) An admission of the facts of abuse by the perpetrator.
23 Pa.C.S. § 6303.

4. The Child Protective Services Law, 23 Pa. C.S. § 6303, defines "sexual abuse or exploitation" as:

[t]he employment, use, persuasion, inducement, enticement or coercion of any child to engage in or assist any other person to engage in any sexually explicit conduct or any simulation of any sexually explicit conduct for the purpose of producing any visual depiction, including photographing, videotaping, computer depicting or filming, of any sexually explicit conduct or the rape, sexual assault, involuntary deviate sexual intercourse, aggravated indecent assault, molestation, incest, indecent exposure, prostitution, statutory sexual assault or other form of sexual exploitation of children.

5. Relevant here, a "dependent child" is one who

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk. . . .
42 Pa.C.S. § 6302.

6. Because the trial court approved the juvenile master's report in its entirety, we refer to the juvenile master's recommendation as the trial court opinion and the juvenile master's findings as the trial court's findings. *See* 42 Pa.C.S. § 6305(d) ("[u]nless a rehearing is order, the findings and recommendations become the findings and order of the court when confirmed in writing by the judge.").

dependent. Stepfather appealed to the Superior Court.

On the same day the trial court approved the juvenile master's recommendation, OCY changed the status of its report from indicated to founded.[7] The Bureau subsequently issued a rule to show cause why Stepfather's request to expunge the abuse report should not be dismissed as moot. However, the Bureau later stayed the rule pending disposition of Stepfather's appeal to the Superior Court. In November 2005, the Superior Court affirmed the trial court's order adjudicating Child as dependent and finding Stepfather abused her. *See In re Matter of A.T.*, (Pa.Super., No. 924 WDA 2005, filed November 30, 2005).

In December 2005, the Bureau filed a second rule to show cause why Stepfather's request for expunction should not be dismissed.[8] Initially, the Bureau dismissed Stepfather's expunction request on the basis of res judicata. On Stepfather's motion, the Department granted reconsideration, and a hearing on the merits ensued.

Before an Administrative Law Judge (ALJ), Child testified as above. In addition, Child admitted she threatened Stepfather that she would tell authorities of the abuse if Stepfather prohibited her from seeing her boyfriend. However, Child's testimony that Stepfather committed the aforementioned acts never waivered.

Also, S.J. (Child's half-sister and Stepfather's daughter) corroborated Child's testimony Stepfather made inappropriate comments to Child regarding her breasts and appearance in certain clothing. Finally, OCY presented the testimony of its investigators and the social worker to whom Child reported the abuse.

Stepfather testified regarding Child's motives for making the abuse allegations.[9]

---

**7.** A report is deemed "founded" if there has been "any judicial determination based on a finding that a child who is a subject of the report has been abused, including the entry of a plea of guilty or nolo contendere or a finding of guilt to a criminal charge involving the same factual circumstances involved in the allegation of child abuse." 23 Pa.C.S. § 6303.

**8.** In December 2005, Stepfather learned for the first time that OCY changed the status of its report from "indicated" to "founded." Stepfather does not allege the Department denied him due process on the ground OCY failed to notify him of the change in the report's status. Indeed, such a claim would be without merit because the Department afforded Stepfather a hearing on the issue of whether the founded report was properly characterized.

Stepfather fails to explain how delayed notice of this change in status prejudiced him. Appeal from the "indicated" finding preserved Stepfather's appellate rights, and he specifies neither evidence lost nor issues waived during the delay.

To the extent Stepfather suggests he would have more vigorously pursued his appeal of the trial court's dependency and abuse order had he received notice of the change in the report's status, we note Stepfather challenged the trial court's abuse finding in his appeal to the Superior Court. *In re Matter of A.T.*, (Pa.Super., No. 924 WDA 2005, filed November 30, 2005), slip op. at 6 (statement of issues) and 8 ("[t]he record contains clear and convincing evidence which supports the trial court's determination of [Child's] dependency and *her abuse*.") (emphasis added). Pursuant to Pennsylvania Rule of Evidence 201, we may take judicial notice of these facts. Pa. R.E. 201(b), (f).

**9.** Stepfather disliked Child's boyfriend because he was five years older than Child, was reportedly expelled from two school districts and smoked marijuana, and transmitted two venereal diseases to Child. Although Stepfather grounded Child from seeing the boyfriend, Child's mother allowed her to see the boyfriend without Stepfather's knowledge. When Stepfather learned of these facts, he again forbade Child to see her boyfriend. Child then threatened Stepfather she would tell the social worker of the abuse.

He denied sexually abusing Child. Stepfather also presented the testimony of a family friend who spoke to Child two days before she reported the abuse. The family friend told Child about a young girl who was removed from her home after reporting that a relative abused her while she was asleep.

The ALJ made numerous findings summarizing the procedural history and testimonial evidence of the proceedings. After careful consideration, however, the ALJ determined the doctrine of res judicata precluded Stepfather's expunction request. In particular, the ALJ found the trial court's approval of the juvenile master's report barred Stepfather's appeal of the founded report. The Department adopted the ALJ's recommendation and dismissed Stepfather's appeal. This appeal followed.

Stepfather raises two primary issues: whether the Department erred by concluding res judicata precluded Stepfather's request for expunction, and whether Stepfather's expunction request should be granted on the merits. As explained below, our recent decision in *K.R.*, holding the Department may rely on findings made in a dependency proceeding to deny a request for expunction of a founded child abuse report, compels the same result here.[10]

At the outset, we note, we issued our decision in *K.R.* on June 4, 2008, just 15 days before Stepfather filed his appellate brief. Stepfather subsequently filed a reply brief conceding the relevance of *K.R.* to this case. Nevertheless, he urges the Court to consider "numerous and important procedural irregularities of the . . . litigation in the [trial court] relating to [Child]." Reply Br. at 1.

We begin with a review of our decision in *K.R.* In late 2005, the Washington County Children and Youth Services (CYS) filed an indicated report of child abuse naming K.R. as perpetrator of mental abuse of her son. CYS filed a second indicated report of abuse in early 2006 naming K.R. as perpetrator of mental abuse of her daughter. Upon learning of the indicated reports, K.R. filed an expunction request.

While K.R.'s expunction request remained pending, a juvenile master held dependency proceedings and ultimately recommended the children be adjudicated dependent. As in this case, the trial court approved the master's recommendation. CYS informed K.R. it changed the status of the indicated reports to "founded."

The Bureau subsequently dismissed K.R.'s appeal of the indicated reports of abuse, citing the trial court's finding that K.R. systematically inculcated her children with unsubstantiated, fabricated, and exaggerated concerns their father would harm them. The Department affirmed.

On further appeal, K.R. asserted the Department denied her a statutorily mandated administrative hearing to challenge the evidence against her regarding the care and custody of her children. This Court addressed the issue of whether the Department could rely on findings made in a dependency proceeding, and not in a separate administrative hearing, to establish K.R. abused her children.

After a thorough review of the purposes of the Juvenile Act and the burden of proof in dependency matters, we examined case law in which courts upheld a founded report of abuse based on the factual findings from dependency adjudications.[11]

---

**10.** Our review is limited to determining whether the findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether errors of law were committed. *C.F. v. Dep't of Pub. Welfare*, 804 A.2d 755 (Pa.Cmwlth.2002).

**11.** *In Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019 (1993); *J.G. v. Department of*

Based on the principles set forth in the case law, we concluded that the Department could rely on the trial court's factual findings in the dependency adjudication to dismiss K.R.'s expunction request where the dependency adjudication named her as the perpetrator of the abuse. *K.R.* at 1078. An administrative hearing on K.R.'s expunction request was not mandated because she was given a full and fair hearing to defend against the allegations in the dependency proceedings. She could not collaterally attack the trial court's dependency and abuse findings.

The Court's determination in *K.R.* allows for application of res judicata in expunction proceedings where the findings of fact in dependency proceedings establish child abuse at the hands of a named perpetrator.

■■■■ Res judicata encompasses two related, but distinct principles: technical res judicata and collateral estoppel. *Stilp v. Commonwealth,* 910 A.2d 775 (Pa. Cmwlth.2006). Technical res judicata provides, where a final judgment on the merits exists, a future lawsuit on the same cause of action is precluded. *Id.* Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were litigated and necessary to a previous judgment. *Id.*

■■■ Applicable here, collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4), the

party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action. *Unified Sportsmen of Pa. v. Pa. Game Comm'n,* 950 A.2d 1120 (Pa.Cmwlth.2008).

■■■ Stepfather here is collaterally estopped from challenging OCY's founded child abuse report. In particular, in the dependency proceedings the trial court found Stepfather abused Child based on her credible testimony Stepfather placed his penis in her hand and fondled her breasts. Reproduced Record (R.R.) at 4–6. The OCY indicated report reached the same legal conclusion based on the same facts. *Id.* at 1–2. Thus, the dispositive legal and factual issues are identical in both proceedings.

The remaining criteria of collateral estoppel are similarly met. The Superior Court affirmed the trial court's finding Stepfather abused Child; therefore, the dependency proceedings resulted in a final judgment on the merits. In addition, Stepfather was a counseled party to the dependency proceedings who actually litigated the issue of sexual abuse.

Stepfather's assertions of "numerous and important procedural irregularities of the ... litigation in [trial court]" do not change the analysis. Reply Br. at 1. Stepfather's allegations of irregular procedures before the trial court are multi-faceted. First, Stepfather asserts the dependency proceedings resulted in an ambiguous order which does not deserve deference.

Second, Stepfather attests the juvenile master is married to an OCY attorney, thus lending an appearance of impropriety to the proceedings.[12] Stepfather's next al-

---

*Public Welfare,* 795 A.2d 1089 (Pa.Cmwlth. 2002).

**12.** The attorney did not participate in the dependency proceedings before her husband,

although she purportedly dropped off a file for OCY counsel before a hearing. In early 2005, the attorney forwarded a copy of OCY's indicated report to Stepfather's then-counsel. The attorney later filed a brief with the Bu-

legation of an appearance of impropriety also relates to the juvenile master and his wife. According to Stepfather's affidavit (appended to his reply brief), the trial court performed their marriage ceremony.

Finally, Stepfather alleges subsequent Bureau hearings on other abuse charges resulted in findings that S.J. (who corroborated parts of Child's testimony in this case) was not credible. This determination, Stepfather maintains, casts doubt on her testimony in Child's dependency proceedings and Stepfather's expunction appeal.

We reject Stepfather's claims as an impermissible collateral attack on the dependency proceedings, for the following reasons. First, the juvenile master specifically recommended that the trial court find Child to have been abused by Stepfather, and the trial court did so. There is simply no merit in Stepfather's current argument that this judicial action was ambiguous or misleading.

■ Further, regarding claims of appearance of impropriety and subsequent inconsistent credibility findings, the documents on which these claims are based are not part of the certified record in this case. Courts will not review matters not part of the certified record. *Bey v. Workers' Comp. Appeal Bd. (Ford Elecs.)*, 801 A.2d 661 (Pa.Cmwlth.2002). Moreover, Stepfather's assertions on these issues are most properly characterized as after-discovered evidence challenges. Where after-discovered evidence casts doubt on a judgment, the proper procedure is to open the judg-

ment. *See Matter of Cook*, 107 Pa. Cmwlth. 207, 527 A.2d 1115 (1987) (setting forth standards for opening judgment based on after-discovered evidence). Here, the Stepfather's remedy, if still available, lies with the trial court.[13]

In sum, the Department properly relied on the trial court's findings in the juvenile proceedings to conclude res judicata bars Stepfather's expunction request. We therefore affirm.

Judge SMITH–RIBNER concurs in the result only.

### ORDER

AND NOW, this 24th day of October, 2008, the order of the Department of Public Welfare is **AFFIRMED**.

---

reau in support of a stay of Stepfather's expunction request pending his appeal to the Superior Court. In her brief, the attorney also argued res judicata barred Stepfather's expunction request.

13. Stepfather also alleges irregularities in the trial court's adoption of the juvenile master's

recommendation and OCY's failure to notify him of the change in status of its indicated report to a founded report. Elsewhere in our opinion, we discuss the legal effect of the trial court's adoption of the juvenile master's report and Stepfather's notice claims. We need not revisit the assertions here.