# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Drew J. Bauer, individually and
d/b/a AmbroseBauer Trains (LLC),   :
  :
  :
        Petitioner   :
  :
        v.   :   No. 501 M.D. 2015
  :   Submitted: June 10, 2016
Pennsylvania State Board of   :
Auctioneer Examiners,   :
  :
        Respondent   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION BY**
**SENIOR JUDGE COLINS**             **FILED: February 16, 2017**

Drew J. Bauer (Bauer), individually and doing business as "AmbroseBauer Trains (LLC)," petitions for review of an order of the State Board of Auctioneer Examiners (Board) upholding citations issued against him and AmbroseBauer Trains, LLC (ABT) for violations of the Auctioneer Licensing and Trading Assistant Registration Act (the Act).[1] We affirm.

In 2009 and 2010, Bauer auctioned toy trains using AuctionsBy™, a computer auction program that he owned. (Certified Record (C.R.) Item 34, Exs. C-5, C-6, C-7 & D-1 ¶¶4-6, Reproduced Record (R.R.) at 212-246, 248.) Bauer conducted these auctions through his company, ABT. (*Id.*, Exs. C-5, C-6, C-7 &

---

[1] Act of December 22, 1983, P.L. 327, *as amended*, 63 P.S. §§ 734.1–734.34.

D-1 ¶5, R.R. at 212-246, 248.) Section 3(a) of the Act provides that it is unlawful for any person to engage in the profession of auctioneer, hold himself out as an auctioneer, conduct an auction, or offer to conduct auctions in this Commonwealth without a license. 63 P.S. § 734.3.[2] In addition, the Act requires a license for operation of an auction company. Former 63 P.S. § 734.10(a); *see also* 63 P.S. § 734.3(a)(1), (e.1)(1).[3] Bauer is an attorney licensed to practice law in Pennsylvania. (C.R. Item 34, Hearing Transcript (H.T.) at 52 & Ex. D-1 ¶1 & D-5, R.R. at 186, 247, 426.) Bauer, however, held no license to practice auctioneering and ABT held no license to operate as an auction company. (*Id.*, H.T. at 26 & Ex. C-1, R.R. at 160, 193-94.)

On May 20, 2010, the Commonwealth filed citations against Bauer and ABT charging that Bauer had conducted auctions without a license, charging that ABT had operated as an unlicensed auction company, and imposing a $1,000 fine on Bauer and a $500 fine on ABT. (C.R. Items 2 & 3, Citations, R.R. at 5-6.)[4]

---

[2] At the time of the events at issue here, Section 3(a) of the Act provided that "it is unlawful for any person to engage in or carry on the profession of auctioneer, to conduct a sale at auction, to hold himself out as an auctioneer or as an apprentice auctioneer or to offer to conduct sales at auction in this Commonwealth without first obtaining a license from the board as an auctioneer or apprentice auctioneer." In 2016, subsequent to both the events at issue here and the Board's order, the Act was substantially amended. *See* Act of July 20, 2016, P.L. 789 (2016 Legislation). The 2016 Legislation expanded the definition of "auction" with respect to online auctions, changed the numbering of certain sections of the Act, and made changes to numerous sections of the Act. The 2016 Legislation did not change the requirement of Section 3(a) of the Act that it is unlawful to engage in auctioneering, hold oneself out as an auctioneer, or conduct or offer to conduct auctions without a license.

[3] At the time of the events at issue here, this requirement was set forth in Section 10(a) of the Act. Although Section 10 of the Act was repealed by the 2016 Legislation, the 2016 Legislation did not eliminate the requirement that auction companies be licensed and moved the licensure of auction companies to Section 3 of the Act. *See* 63 P.S. § 734.3(a)(1), (e.1).

[4] Although the citation against ABT referenced Section 9(a) of the Act, which did not govern auction companies, it stated that the charge against ABT was that it was not "licensed as an **(Footnote continued on next page…)**

2

Bauer and ABT denied the violations but did not appear at an August 2010 hearing on the citations and the hearing examiner issued orders sustaining the citations. Bauer and ABT appealed these orders to the Board, asserting, *inter alia*, that they had reason to believe that the hearing would not be held on that date, and the Board, on November 15, 2013, vacated the orders and remanded the matter to the hearing officer for a new hearing.

Before the new hearing was scheduled, Bauer and ABT filed preliminary objections seeking dismissal of the citations on the ground that Bauer was an attorney, which the Board overruled on March 13, 2014. Bauer also filed a petition for review in this Court's original jurisdiction against the Commonwealth, the Board and other Commonwealth parties docketed at No. 287 M.D. 2014 (Commonwealth Court action), and sought a preliminary injunction to enjoin the hearing on the citations, which was scheduled for August 11, 2014. On August 7, 2014, following a hearing at which the parties presented a stipulation of facts and argument, this Court denied Bauer's motion for preliminary injunction for failure to exhaust administrative remedies and on the ground that the petition for review "is not likely to succeed on the merits in that Petitioners have failed to state that conducting auctions is comparable to the practice of law." (8/7/14 Order in 287 M.D. 2014, R.R. at 770-771.)[5]

---

**(continued…)**
auction company." (C.R. Item 2, Citation, R.R. at 6.) Bauer and ABT had ample notice that the citation charged a violation of Section 10(a) of the Act, requiring licensure of auction companies, as the hearing examiner ruled that the reference to Section 9(a) was a typographical error and that the citation against ABT charged a violation of Section 10(a) almost four years before the evidentiary hearing at which Bauer and ABT contested the citations. (C.R. Item 8, August 2010 Hearing Examiner Order at 1 n.1, R.R. at 12.)

[5] The Commonwealth Court action was subsequently dismissed without prejudice at Bauer's request in September 2014.

On August 11, 2014, the hearing examiner held a hearing on the citations at which Bauer appeared on his own behalf and as attorney for ABT. At this hearing, Bauer and a Department of State professional conduct investigator testified. The parties also introduced documentary evidence, including a 2009 client agreement hiring Bauer to sell a consignment of toy trains by auction, April 2010 and May 2010 printouts from ABT's website, www.ambrosebauer.com, and the stipulation of facts entered into by Bauer and the respondents in the Commonwealth Court action. The parties were given the opportunity to file post-hearing briefs and filed such briefs after the hearing. On December 18, 2014, the hearing examiner issued a 61-page proposed adjudication and order concluding that Bauer had engaged in the practice of auctioneering without a license in violation of Section 3(a) of the Act, concluding that ABT had operated as an auction company without a license in violation of Section 10(a) of the Act, and upholding both citations. Bauer and ABT filed exceptions to the hearing examiner's proposed adjudication and order. On September 15, 2015, the Board issued an order adopting the hearing examiner's proposed adjudication and upholding the citations. This appeal followed.[6]

Bauer argues that the Act's license requirements cannot apply to him because he is an attorney, contending that the Act cannot constitutionally apply to

---

[6] Bauer filed this petition for review in both this Court's original jurisdiction and its appellate jurisdiction. By Order entered February 3, 2016, this Court sustained the Board's preliminary objections to the portion of the petition for review addressed to the Court's original jurisdiction, which had sought a declaratory judgment and injunctive relief. This matter is therefore before us solely in our appellate jurisdiction as an appeal from the Board's order. Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Stiles v. Auctioneers Examiners Board*, 816 A.2d 1254, 1255 n.1 (Pa. Cmwlth. 2003).

4

attorneys and that auctions by attorneys fall within the Act's exemptions from license requirements.[7] We do not agree.

The Pennsylvania Supreme Court has exclusive jurisdiction to regulate the conduct of attorneys in the practice of law in this Commonwealth. Pa. Const., art. V, § 10(c) ("The Supreme Court shall have the power to prescribe general rules . . . for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch"); *Commonwealth v. Stern*, 701 A.2d 568, 570, 572-73 (Pa. 1997); *Maunus v. State Ethics Commission*, 544 A.2d 1324, 1325-26 (Pa. 1988). The fact that a statute regulates both lawyers and non-lawyers does not automatically make its application to lawyers constitutional. *Shaulis v. Pennsylvania State Ethics Commission*, 833 A.2d 123, 132-33 (Pa. 2003); *Gmerek v. State Ethics Commission*, 751 A.2d 1241, 1254 (Pa. Cmwlth. 2000) (*en banc*), *aff'd by an equally divided court*, 807 A.2d 812 (Pa. 2002). The application to attorneys of

---

[7] This Court notes that Bauer's brief is in violation of Pa. R.A.P. 2135(a), which provides, with exceptions not relevant here, that "[u]nless otherwise ordered by an appellate court: (1) [a] principal brief shall not exceed 14,000 words." The only portions of a brief that may be excluded from this word count limitation are "[s]upplementary matters, such as, the cover of the brief and pages containing the table of contents, tables of citations, proof of service and any addendum containing opinions, signature blocks or any other similar supplementary matter provided for by these rules." Pa. R.A.P. 2135(b). Nothing in Rule 2135 permits exclusion of footnotes from the 14,000 word limit. Bauer's brief is 74 pages in length and contains 109 footnotes, many of which are lengthy. Bauer represented to this Court that his brief complied with Rule 2135 by excluding footnotes from the word count that he ran on the brief. (Petitioner's Br. at 75 (stating that the supplementary matter excluded from the word count consists of "the cover of the brief, pages containing the table of contents, tables of citations, proof of service, this Certificate of Compliance, footnotes, and any addendum containing opinions, signature block or any other similar supplementary matter provided for the rules") (emphasis added).) This attempt to evade the limitations on the length of briefs is disingenuous and unprofessional. When the word count is properly calculated and the 109 footnotes are included, Bauer's brief contains 22,246 words. Rather than strike the brief, the Court has chosen to issue a reasoned opinion dealing with the issues presented. Counsel is admonished that similar conduct in the future will result in the brief being stricken, as well as sanctions.

statutes governing conduct unrelated to the legal profession, however, does not constitute regulation of the practice of law and is not barred by the Supreme Court's exclusive jurisdiction over the practice of law. *P.J.S. v. Pennsylvania State Ethics Commission*, 723 A.2d 174, 178 (Pa. 1999); *Gmerek*, 751 A.2d at 1252-54. As the Supreme Court has made clear,

> the jurisdiction of this court is not infringed when a regulation aimed at conduct is applied to all persons, and some of those persons happen to be attorneys.
>
> *          *          *
>
> To hold … that the mere status of "attorney" exempts one from meeting the necessary professional regulations which flow from whatever position one holds in addition to that of "attorney" is absurd.

*P.J.S.*, 723 A.2d at 178.

Whether a statute governing the actions of both lawyers and non-lawyers constitutes an unconstitutional regulation of the practice of law depends on whether it attempts to control the conduct of lawyers in rendering professional legal services to their clients. *Gmerek*, 751 A.2d at 1254. The types of services that have been held to constitute professional legal services are generally those involving legal advice to clients, preparation of documents for clients involving legal principles beyond the knowledge of ordinary laypersons, and the appearance on behalf of clients before tribunals whose actions could affect the clients' rights. *Office of Disciplinary Counsel v. Marcone*, 855 A.2d 654, 660 (Pa. 2004); *Gmerek*, 751 A.2d at 1255.

Bauer's conduct here does not constitute the rendering of professional legal services. Bauer's services in conducting auctions consisted of selling toy trains at auction, not providing legal advice to his clients, preparing documents for his clients that required legal training, or appearing before any tribunal. Bauer's

6

client contracts provided that the client hires Bauer "for the limited purpose of selling the Consignment," which it defined as "certain toy train(s) and/or related item(s)" owned by the client, and provided that the "relationship arising from this Agreement is limited solely to the offer, sale and transfer of the Consignment and that the Attorney [Bauer] does not represent the Client, or provide the Client legal advise [*sic*], or legal service, in or on any other matter." (C.R. Item 34, Ex. C-7 ¶¶2, 4, 5 & D-3 ¶¶2, 4, 5, R.R. at 236, 255.) The auctioning of toy trains or other merchandise does not constitute the practice of law. While Bauer's auctions may involve specialized knowledge or skill concerning how to run an auction so as to obtain the highest or most favorable offer or concerning the valuation of the items being sold, that knowledge and skill is unrelated to legal training and competence in the practice of law. Requiring Bauer to obtain an auctioneering license therefore does not violate the Supreme Court's exclusive jurisdiction over the practice of law.

Bauer argues that even if his auctions do not constitute legal services, the Rules of Professional Conduct adopted by the Supreme Court regulate the providing by lawyers of nonlegal services and that the Act conflicts with the confidentiality requirements of Rule 1.6 of the Rules of Professional Conduct and with other Rules of Professional Conduct. The flaw in these arguments is that the Rules of Professional Conduct apply to nonlegal services only where the attorney is also providing legal services to the client or the nonlegal services could reasonably be understood by the client to be legal services. Rule 5.7 provides that the Rules of Professional Conduct apply to nonlegal services "that might reasonably be performed in conjunction with and in substance are related to the provision of legal services" where there is potential for confusion because the

7

nonlegal services "are not distinct from legal services provided to that recipient" or because the recipient could reasonably believe that he is receiving legal services. Pa. R.P.C. 5.7(a)-(c), (e). Here, Bauer's contracts demonstrate that he was conducting auctions for clients for whom he was providing no other services and the auctioning of toy trains is not an activity that would reasonably be understood as involving legal services unless it was provided in conjunction with other services that involved legal advice or the exercise of legal training.

Bauer's claim that the Act by its terms does not apply to attorneys likewise fails. At the time of the events at issue here, Section 3(h)(3) of the Act provided that "[t]he requirement to obtain a license under this act does not apply to sales at auction in the following circumstances: … (3) To a sale conducted by or on behalf of a person appointed by judicial order or decree." Former 63 P.S. § 734.3(h)(3).[8] Contrary to Bauer's assertions, this does not exempt attorneys from the requirement of an auctioneering license. Rather, the clear intent of this exemption is to permit auctions by persons appointed by a court to conduct an auction or to sell the property being auctioned, not to authorize individuals to auction property without a license simply because they have been appointed by a court to some position or responsibility completely unconnected to any auction of any property. The fact that Bauer has been admitted by the Pennsylvania Supreme Court to practice law in Pennsylvania is not an appointment to sell or auction property; it is a determination by the Supreme Court that he may practice law. As explained above, auctioning toy trains is not the practice of law. Because Bauer

---

[8] The 2016 Legislation moved the exemptions that had been in Section 3(h) of the Act to a new Section 3.1, but made no change in the language of the exemption that had been set forth in Section 3(h)(3). *See* 63 P.S. § 734.3.1(3).

did not show that he was appointed by a court to auction property or that he was appointed by a court to sell the toy trains that he auctioned in 2009 and 2010, the exemption for persons appointed by judicial order or decree does not apply here and cannot provide a defense to the citations.[9]

Nor does the exemption in the Act for sales from a decedent's estate bar the citations against Bauer and ABT. At the time of the events at issue here, Section 3(h)(4) of the Act provided an exemption from licensure for "a sale conducted in the settlement of any decedent's estate." Former 63 P.S. § 734.3(h)(4).[10] While Bauer has represented decedents' estates and has sold toy trains for decedents' estates, he testified that estates constituted only approximately one-third of the clients for whom he has auctioned toy trains. (C.R. Item 34, H.T. at 46 & Ex. D-1 ¶2, R.R. at 180, 247.) Indeed, nothing in the 2009 client agreement indicated that a decedent's estate was involved or that the toy trains to be auctioned under that agreement were owned by an estate. (*Id.*, Ex. C-7, R.R. at 236-246.) Because Bauer's testimony established that most of his sales did not fall within the exemption for estate sales, the hearing examiner and the Board reasonably concluded that this exemption did not provide a defense to the charge

---

[9] Bauer argues that applying the requirement of an auctioneering license to attorneys serves no purpose because attorneys have sufficient education and training and because they are subject to regulation in their practice of law. This is a challenge to the wisdom of the Act, an issue that can be determined only by the legislature, not by this Court. *Khan v. State Board of Auctioneer Examiners*, 842 A.2d 936, 947 (Pa. 2004). Moreover, the education requirements for an auctioneering license consist of subjects that attorneys would not necessarily have studied in law school. *See* 49 Pa. Code § 1.11(c) (providing that the areas of study for an auctioneering license are "[a]udience communications," "[p]rocurement of merchandise for auction," "[a]ppraisal," "[a]uction law," "[p]reparation for auction," and "[c]onducting an auction").

[10] The 2016 Legislation amended the language of this exemption and it now exempts sales "conducted in the settlement of any decedent's estate conducted by the executor or administrator of the estate." 63 P.S. § 734.3.1(4).

9

that Bauer had conducted auctions for which the Act required an auctioneering license.

Bauer also contends that the Commonwealth did not prove that he violated the licensure requirement because his auctions were online auctions and that the Commonwealth did not prove that ABT was required to obtain an auction company license. In this administrative proceeding, the burden was on the Commonwealth to prove by a preponderance of the evidence that Bauer and ABT committed the violations of the Act with which they were charged. *Agostino v. Township of Collier*, 968 A.2d 258, 269-70 (Pa. Cmwlth. 2009); *Boguslawski v. Department of Education*, 837 A.2d 614, 617 n.3 (Pa. Cmwlth. 2003); *Samuel J. Lansberry, Inc. v. Pennsylvania Public Utility Commission*, 578 A.2d 600, 602 (Pa. Cmwlth. 1990). The Commonwealth satisfied its burden of proof on both of these issues.

At the time of the events in question, the Act defined "auction" and "sale at auction" as

> [t]he offer to sell property by an auctioneer or apprentice auctioneer to the members of an audience congregated for the purpose of making bids for the purchase of the property in an effort by the auctioneer or apprentice auctioneer to advance the amount of the bids to obtain the highest or most favorable offer. <u>The term "auction" or "sale at auction" excludes any sale conducted through an online Internet bidding platform.</u>

Former 63 P.S. § 734.2 (emphasis added).[11] Bauer's claim that all of his auctions were "conducted through an online Internet bidding platform" and that his actions therefore did not violate the Act fails for three reasons.

---

[11] The 2016 Legislation removed the exclusion of sales conducted through an "online Internet bidding platform." The Act now defines "auction" and "sale at auction" as follows:
**(Footnote continued on next page…)**

First, the Commonwealth introduced evidence that Bauer conducted in-person auctions in addition to online auctions. The printouts from ABT's website show that Bauer represented in 2010 that he conducted private auctions that some bidders attended in person. Bauer testified that he owns the ABT website, that ABT's actions are his actions, and that information in the website printouts was authored by him. (C.R. Item 34, H.T. at 42-43, 54, R.R. at 176-177, 188.) The ABT website stated that Bauer conducted private auctions, repeatedly referred to bidders that "attend" his private auctions, distinguished bidders who

**(continued…)**

(1) A method for the sale or lease of property, or any interest in property, by means of a verbal exchange, regular mail, telecommunications, the Internet, an electronic transmission or a physical gesture between an auctioneer, apprentice auctioneer or auction company and one or more potential purchasers or lessees through the solicitation of offers, in the form of bids, in an effort to advance the amount of the bids to obtain the highest or most favorable offer.

(2) The term "auction" or "sale at auction" includes:

(i) live auctions;

(ii) online auctions;

(iii) real-time auctions;

(iv) extended auctions;

(v) any similar such events as may be devised with the development of technology; and

(vi) any combination of the foregoing.

(3) The term "auction" or "sale at auction" does not include a negotiated transaction. Nothing in this act is intended to deny an auctioneer, apprentice auctioneer or auction company a commission or other compensation earned for auction-related activities that result in or facilitate a negotiated transaction by the seller, or other agent of the seller, and a buyer.

63 P.S. § 734.2 (emphasis added).

11

"attend" such auctions from those who bid online, and stated that payment by high bidders at private auctions was required "before they leave the premises on the day of the Auction." (*Id.*, Exs. C-5, C-6, R.R. at 212, 214, 232-235; *see also* Hearing Examiner's Proposed Adjudication and Order Findings of Fact (Hearing Examiner F.F.) ¶¶14-16, R.R. at 483-485.) These admissions by Bauer are sufficient to support the conclusion that Bauer had in fact conducted non-online auctions without a license.

Contrary to Bauer's assertions, the stipulation of facts in the Commonwealth Court action did not bar the Commonwealth from proving that Bauer conducted in-person auctions. Although the Commonwealth and Bauer stipulated in that document that "Bauer uses AuctionsBy™ to auction the aforementioned toy trains through his company's, AmbroseBauer Trains, LLC, website" and that "Bauer admits that he has conducted approximately 210 internet auctions" (C.R. Item 34, Ex. D-1 ¶¶5-6, R.R. at 248), nothing in the stipulation states that online and internet auctions were the only auctions that Bauer conducted or that Bauer did not conduct in-person private auctions. To the contrary, with respect to private auctions, the stipulation of facts states only that "Bauer's company website states that he is conducting private auctions." (*Id.*, Ex. D-1 ¶7, R.R. at 248.)

Second, even if all of Bauer's auctions were conducted on the internet, the hearing officer and Board correctly concluded that the auctions conducted by him using his AuctionsBy™ program did not qualify as sales through an "online Internet bidding platform." The Act defined "online Internet bidding platform" as

> [h]ardware or software architecture that provides or enables
> computer access by multiple users to an interactive computer

12

> server for the purpose of allowing users to offer property for sale and that does not examine, set the price or prepare the description of the property to be offered.

Former 63 P.S. § 734.2. This definition does not encompass all online auctions. Rather, it excludes from the definition of "auction" and "sale at auction" only sales through internet sites on which multiple users can independently sell property. AuctionsBy™ was not an internet site that multiple users independently access to sell property; it was a computer program owned by Bauer that was run by him and by auction houses to which he sold the program. (C.R. Item 34, Ex. D-1 ¶4, R.R. at 248.) In his AuctionsBy™ auctions, the internet site that Bauer used to sell toy trains was the website of his company, ABT, not a website where the general public could auction property without Bauer's participation and involvement. (*Id.*, Ex. D-1 ¶5, R.R. at 248; *see also id.*, Ex. C-5, R.R. at 212.) The evidence also showed that Bauer examined, set the price, and prepared descriptions of the toy trains being auctioned, placed these descriptions and prices on the ABT website, and did not merely offer a website through which others could auction toy trains under their own descriptions and pricing. (*Id.*, Exs. C-5, C-6, R.R. at 212-213, 215-222, 234-235; *see also* Hearing Examiner F.F. ¶¶18, 21, R.R. at 485-487; Board Final Memorandum Order at 4-5.) Because Bauer's AuctionsBy™ auctions were not conducted through an internet site that permitted multiple users to sell property and that did not examine, set the price, or prepare descriptions of the property being sold, they were not sales "conducted through an online Internet bidding platform" and were auctions for which the Act requires an auctioneering license.[12]

---

[12] Contrary to Bauer's assertions, nothing in the testimony of the Department of State professional conduct investigator shows that Bauer's auctions were conducted through an "online Internet bidding platform." What constitutes an "online Internet bidding platform" is a

**(Footnote continued on next page…)**

Third, the Commonwealth was not required to prove that Bauer actually conducted auctions that required a license. The citation against Bauer charged that he violated Section 3(a) of the Act. Section 3(a) not only prohibits the conducting of auctions without a license, but also provides that it is unlawful for a person to "hold himself out as an auctioneer" or offer to conduct auctions without obtaining a license from the Board. Former 63 P.S. § 734.3(a); *see also* 63 P.S. § 734.3(a)(1). Under the Act, any individual "who sells or offers or attempts to sell property at auction" is an "auctioneer." Former 63 P.S. § 734.2; *see also* 63 P.S. § 734.2. Although the citation also stated that Bauer "conducts auctions in this Commonwealth without being licensed to do so by the Board" (C.R. Item 3, Citation, R.R. at 5), Bauer admitted that he "understands that the act of merely advertising 'auctions' would fall within the coverage of the May 20, 2010 Citation as to him." (Respondents' Exceptions to the Proposed Order of the Hearing Officer at 14 n.41, R.R. at 551.) Because Bauer's representations on the ABT website show that he held himself out as conducting in-person private auctions, the evidence before the hearing officer and Board was sufficient to uphold the citation against him even if all auctions that Bauer actually conducted had been conducted through an "online Internet bidding platform."

The Commonwealth likewise satisfied its burden of proving that ABT was required to obtain an auction company license. At the time of the events at issue here, the Act defined "auction company" as "[a] company which, as part of

---

**(continued…)**

question of law. It is the facts concerning the website through which auctions are conducted, not the labels or nomenclature used by a witness, that determine whether an auction was conducted through an "online Internet bidding platform." Neither the investigator nor Bauer testified that the ABT website was open to users to conduct auctions not run by Bauer.

14

its business, arranges, manages, sponsors, advertises or carries out auctions," former 63 P.S. § 734.2, and Section 10(a) of the Act provided:

> Requirement for license. -- Every person, except an individual who is licensed as an auctioneer or an individual who is licensed to operate an auction house, shall, before operating an auction company, obtain a license from the board to operate the auction company. Every partnership, association or corporation must obtain a license even though a member or officer is licensed as an auctioneer.

Former 63 P.S. § 734.10(a).[13] Bauer contends that ABT was a sole proprietorship and was not required to obtain a license because it was not a partnership, association, or corporation. This argument fails for two reasons.

First, evidence was introduced that ABT operated as a partnership when it advertised and carried out auctions in 2009. The 2009 client contract stated that "AmbroseBauer Trains (hereinafter "AmbroseBauer") is a Pennsylvania General Partnership comprised of Paul V. Ambrose and Drew J. Bauer" and was signed by Bauer and Mr. Ambrose as partners. (C.R. Item 34, Ex. C-7 at 1 ¶3 & at 11, R.R. at 236, 246.)

Second, Section 10(a) was not limited to partnerships, associations and corporations, and required that "[e]very person … shall, before operating an auction company, obtain a license from the board to operate the auction company."

---

[13] The 2016 Legislation redefined "auction company," and it is now defined as "[a] legally recognized entity that sells or attempts to sell property at auction or performs, or offers to perform, any of the functions or activities requiring licensure as an auction company under section 3(a)(1)[,] … includ[ing] any legally recognized entity that holds itself out as engaged in the business of selling property at auction". 63 P.S. § 734.2. The 2016 Legislation moved the licensure of auction companies to Section 3 of the Act, as was noted above, and also modified the language of former Section 10(a). *See* 63 P.S. § 734.3(e.1)(1) (providing that "[e]very legally recognized entity shall, before operating as an auction company, obtain an auction company license issued by the board").

15

Former 63 P.S. § 734.10(a) (emphasis added). The Act, at the time at issue here, defined "person" as including any "individual, partnership, association, corporation, limited liability company or other entity." Former 63 P.S. § 734.2. When ABT advertised and carried out auctions in 2010, its name, AmbroseBauer Trains, LLC, identified it as a limited liability company. *See* 15 Pa. C.S. § 8904(a)(3) (requiring that the name of a limited liability company include "the term 'company,' 'limited' or 'limited liability company' or an abbreviation of one of those terms"), repealed by the Act of October 22, 2014, P.L. 2640.[14] While Bauer claims that ABT was a sole proprietorship owned by him in 2010, that contention is contradicted by the fact that ABT's name, with its LLC abbreviation, would not have constituted a valid fictitious name for a sole proprietorship owned by an individual. *See* 54 Pa. C.S. § 311(b)(1) (prohibiting registration of fictitious names that "contain a corporate designator such as 'corporation,' 'incorporated' or 'limited' or any derivation or abbreviation thereof unless the entity or at least one entity named in the application for registration of fictitious name is a corporation"). The document that Bauer introduced in evidence to support his claim that ABT was a sole proprietorship was not inconsistent with ABT's status as a limited liability company in 2010, as it was a 2014 fictitious name filing and was for the name "AmbroseBauer Trains," not "AmbroseBauer Trains, LLC." (C.R. Item 34, Ex. D-2, R.R. at 251-253.) Moreover, this filing identified "AmbroseBauer Trains, LLC" as an "[e]ntity" that had "withdrawn from the business" and identified Bauer as the "[i]ncorporator" of ABT. (*Id.*)

Bauer also argues that ABT did not arrange, manage, sponsor, advertise or carry out auctions to which the Act applied. This argument is without

---

[14] This requirement now appears in 15 Pa. C.S. § 204(c).

merit. There was ample evidence before the hearing examiner and Board that Bauer conducted auctions through ABT and that ABT's website advertised toy train auctions. (C.R. Item 34, Exs. C-5 & D-1 ¶5, R.R. at 212-220, 248.) As was demonstrated above, these auctions included auctions that were not conducted through an "online Internet bidding platform." The evidence therefore established that ABT, as part of its business, carried out and advertised auctions, as that term was defined by the Act, and that ABT was an "auction company" to which Section 10(a)'s license requirement applied.

Finally, in addition to challenging the validity of the citations, Bauer claims that the Board violated his and ABT's due process rights to a fair and impartial tribunal. Bauer bases this argument on contentions that the Board was almost entirely composed of members of the Pennsylvania Auctioneers Association, who are his competitors, and that the Board showed bias in its findings. Neither of these contentions has merit.

Bauer makes allegations in his brief concerning members of the Board and the organizations to which they belong. These allegations, however, are unsupported by anything in the certified record. This Court may consider on appeal only what is in the certified record. *B.K. v. Department of Public Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012); *C.J. v. Department of Public Welfare*, 960 A.2d 494, 500 (Pa. Cmwlth. 2008). Accordingly, Bauer's allegations must be disregarded and the only evidence before this Court as to the Board's membership is what the Act provides. Section 31 of the Act provides, and provided at the time of all of the Board's actions in this matter, that the Board consists of the Commissioner of Professional and Occupational Affairs, the Director of the Bureau of Consumer Protection in the Office of Attorney General or his designee,

17

two individuals representing the public at large, one registered trading assistant, and four licensed auctioneers. 63 P.S. § 734.31(a). The licensed auctioneers, registered trading assistant, and individuals representing the public are all appointed by the Governor and confirmed by the State Senate. *Id.* This composition does not prevent the Board from fairly and impartially adjudicating citations for violations of the Act.

*North Carolina State Board of Dental Examiners v. F.T.C.*, _ U.S. _, 135 S. Ct. 1101 (2015), relied on by Bauer, is not to the contrary. In *North Carolina State Board of Dental Examiners*, the Supreme Court did not hold that members of the regulated profession cannot constitute a fair and impartial tribunal; rather, it held only that such board members were not under the facts of that case clothed with state immunity from injunctive relief under the federal antitrust laws. In fact, the Court in *North Carolina State Board of Dental Examiners* recognized that states have substantial reasons for staffing such boards with members of the profession, who would be most familiar with the subjects they are to address. *Id.* at _, 135 S. Ct. at 1115. Moreover, the facts in that case were substantially different from the Board's composition and actions here. Seven of the eight members of the state board in *North Carolina State Board of Dental Examiners* were members of the regulated professions and those seven members were elected by the other licensed members of their professions, not appointed by the state. *Id.* at _, 135 S. Ct. at 1108. In addition, the actions of the state board there involved a subject that was not addressed by the legislature in the governing statute and were not subject to review or reversal by state officials. *Id.* at _, 135 S. Ct. at 1116. Here, in contrast, the members of the Board who were Bauer's competitors were appointed by the Commonwealth, the Board's action applied express statutory

18

provisions adopted by the legislature, and the Board's interpretation and application of the Act is subject to judicial review by this Court.

The record amply demonstrates that the Board provided Bauer and ABT a full, fair and impartial hearing and adjudication in this matter. Bauer and ABT received a full evidentiary hearing before a hearing examiner whose impartiality Bauer has not challenged and a full opportunity to brief the legal questions at issue. The hearing examiner's proposed adjudication and the Board's decision addressing Bauer's and ABT's exceptions and upholding the citations are detailed, well-reasoned and supported by the evidence. Moreover, there is nothing in the record to suggest that the issuance of the citations was affected by any intent to diminish competition. The investigation was prompted by a complaint filed by one of Bauer's auction clients, not a complaint of an auctioneer, and the investigation was conducted by an employee of the Department of State, not by an auctioneer or auctioneering association. (C.R. Item 34, H.T. at 14, 22, 26-27, R.R. at 148, 156, 160-161.)

For the foregoing reasons, we affirm the order of the Board in this matter.

_____
JAMES GARDNER COLINS, Senior Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Drew J. Bauer, individually and     :
d/b/a AmbroseBauer Trains (LLC),  :
                                :
         Petitioner        :
                                :
         v.                :   No. 501 M.D. 2015
                                :
Pennsylvania State Board of       :
Auctioneer Examiners,          :
                                :
         Respondent     :

## O R D E R

AND NOW, this 16th day of February, 2017, the order of the State Board of Auctioneer Examiners in the above matter is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge